THOMAS G. WALTON and others v. JOSEPH C. MILLS.

*Injunction— Water Rights.*

1. An injunction will not be granted to restrain defendant from a con-
templated diversion of water, (by means of canals in process of con-
struction) intended to be used in gold-washing operations, upon an
allegation that the same will cause injury to similar operations of
plaintiffs, the lower proprietors on same stream.

2. The relative rights of upper and lower proprietors of land over which
a natural water-course flows, to the running water, discussed by
SMITH, C. J. Such right should be established by finding of a jury.
Injuries—when compensated in damages at law, and when irreparable
and calling for injunctive relief.

(*Pugh* v. *Wheeler*, 2 Dev. & Bat., 50; *State* v. *Glen*, 7 Jones, 321;
*Wilder* v. *Strickland*, 2 Jones Eq., 386; *Dorsey* v. *Allen*, 85 N. C., 385,
cited and approved.)

APPEAL from an order continuing an injunction, made at
Spring Term, 1881, of BURKE Superior Court, by *McKoy, J.*
The defendant appealed.

*Messrs. Merrimon & Fuller* and *W. W. Fleming,* for plain-
tiffs.
*Mr. G. N. Folk,* for defendant.

SMITH, C. J.   The object of this action, brought by several proprietors of land on an unnavigable stream which proceeds from an upper tract belonging to the defendant, is to restrain him from a contemplated diversion of its waters from their proper channel by means of canals and conduits in process of construction, and which the defendant intends to use in gold washing operations, to the injury of the gold mines and mills on the plaintiffs' lands which require the uninterrupted flow of the water.   Upon an *ex parte* application of the plaintiffs the judge appointed a day for the hearing, and meanwhile issued an order requiring the defendant to desist "from diverting or changing from their natural course, the waters of Hall's Creek and its upper tributaries, or otherwise obstructing or interfering with the natural and regular flow thereof."   At the hearing upon the complaint, answer and accompanying affidavits offered as evidence, His Honor "adjudged that the restraining order be continued and the defendant enjoined as directed in the restraining order from doing the acts therein forbidden, until the hearing of the cause."   From this judgment the defendant appeals.

It does not appear that any damage to the property of the plaintiffs has yet accrued from any act of the defendant whose canals and conduits have not tapped the creek to drain its waters, and it is from the apprehended consequences and injury to follow when this is done, that the coercive power of the court is sought in advance.

The relative rights of lower and upper proprietors of land over which a natural water-course flows, to the running water, are well settled, and have been so considered ever since the elaborate judgment rendered in *Mason* v. *Howard*, 5 B. and A. 1, and the true principle, "*most perspicuously stated*," as observed by BARON PARKE in *Embrey* v. *Owen*, 6 Exc., 369.

" Every proprietor of land on the bank of a river has nat-

urally an equal right to the use of the water which flows in the stream, adjacent to his lands, as it was wont to run (*currere solebat*) without diminution or alteration.. No proprietor has the right to use the water, to the prejudice of the proprietors above or below him, unless he has a prior right to divert it, or a title to some exclusive enjoyment. He has no property in the water itself, but a simple usufruct while it passes along. *Aqua currit et debet currere* is the language of the law. Though he may use the water while it runs on his land, he cannot unreasonably detain it, or give it another direction, and he must return it to its ordinary channel, when it leaves his estate. * * * Streams of water are intended for the use and comfort of man, and it would be unreasonable, and contrary to the universal sense of mankind, to debar any riparian proprietor from the application of the water to domestic, agricultural and manufacturing purposes, provided the use of it be made under the limitations which have been mentioned." 3 Kent. Com., 439, 440.

The reasonable use of the water as it passes in its onward course so that no damage is done by withholding it, is the rule by which the rights of riparian owners are regulated. Ph. Rights of Water, 26, 27; and this is recognized in *Pugh* v. *Wheeler*, 2 Dev. & Bat , 50; *State* v. *Glen*, 7 Jones, 321. Conceding the general principle, it does not follow that, when the injury from the excessive appropriation of the water by an upper proprietor to the land of a lower proprietor is inconsiderable, and may be compensated in damages, while the stoppage of the works of the other will entail on him large and irreparable loss, the restraining power will be exercised ; and still less when the injury to the complaining party is uncertain in fact and degree, and mainly conjectural and apprehended. It is not every case in which an action will lie that a court of equity will interpose.

"There must be such an injury as from its nature is not susceptible of being adequately compensated by damages

at law, or such as, from its continuance or permanent mischief, must occasion a constantly recurring grievance which cannot be otherwise prevented but by an injunction." 2 Story Eq. Jur., § 925. And usually the right should be established by the finding of the jury. High on Inj., § 517. "It is not every slight or doubtful injury," remarks NASH, C. J., in *Wilder* v. *Strickland*, 2 Jones Eq., 386, "that will justify the courts in exerting their extraordinary power of injunction in restraining a man from using his property as his interest may demand, when the benefit is mutual to the public and the owner."

The present interlocutory order of restraint suspends the operations of the defendant, looking to the successful working and development of a new and valuable industry, with the possible loss of a large expenditure towards that object when no damage has yet been received, and if it should come, may prove less than the defendant's apprehensions may have estimated, and measurable in a money remuneration. We have so recently had occasion to consider this aspect of the case and the practice appropriate thereto, that we simply refer to *Dorsey* v. *Allen*, 85 N. C., 358, and avoid needless repetition.

Looking into the evidence which we find much difficulty in understanding from the want of a map to show the locality of the different objects to which it refers, it seems that the defendant proposes to conduct the waters of Hall's creek and some of its tributaries by means of canals to his gold mine and there to use and waste it in washing the auriferous earth, and separating from it the gold which it contains, by a process suitable to that end. The plaintiffs allege that this withdrawal of the water will seriously injure their similar gold operations and interfere with the working of their mills, for which the water supply will be wholly insufficient. The defendant on the contrary avows that he owns over two thousand acres of land valueless except as a

gold mine, for which the water is an indispensable necessity; that he has made large expenditures in preparation for his work; that the intended diversion of part of the waters will still leave a sufficient supply for all the plaintiffs' purposes, milling, mining or agricultural, for which their lands have hitherto been, or are now, or intended to be used, and they would still have double the quantity abstracted by the canals of the defendant, and he attempts to explain the sources from which this supply will be derived. The plaintiffs assert their property also to be valuable, if the waters of the creek and its branches are permitted to flow on free from obstruction or drainage, and the serious detriment it will sustain if the defendant is allowed to carry out his designs. Thus it would seem that while on the one hand the plaintiffs would sustain great injury if the current of the creek and its tributaries are diverted from the proper channel, and their needed supply cut off; so on the other hand would the defendant be subjected to much loss from the moneys he has expended and in the impaired value of the land if frustrated in the only feasible way of mining upon it. In the one case, there may be adequate compensation in damages obtained, in the other, there may be none or a very imperfect redress. The defendant denies that any injury not easily remedied will arise from his use of the water, and it does not appear that any mining operations are now carried on by the plaintiffs. There has been no jury verdict to settle these disputed issues of fact, and will be before final judgment. If the defendant is ultimately required to fill up his canals, he will have no cause of complaint for expenditures made since the institution of the suit and in view of its unfavorable results to himself.

There has as yet been no damage; if there shall be hereafter before trial, application can then be heard for a restraining order, founded upon actual and ascertained, not upon conjectural damages merely. We think, therefore, the

injunction attended by such consequences was prematurely issued and there was error in awarding it. This new industry of gold washing may from necessity require some modification of the general law, since for mill and mechanical purposes the use of the passing water as a moving power does not destroy, or in any considerable degree, reduce the volume which still flows on for the use of others. The diversion for gold washing often at remote points, involves its total loss to others. How these conflicting industries are to be reconciled may present a problem not easy of solution upon the rule hitherto established. But the question does not arise and we now simply decide that there is error in continuing the injunction, but without prejudice to the plaintiffs' right to move for it hereafter when the case then presented will admit.

The judgment must be reversed, and this will be certified.

Error.           Reversed.