C. A. LITTLE et al. v. TOWN OF LENOIR.

(Filed 8 December, 1909.)

1. **Appeal and Error—Injunction—Completed Acts—Appeal Dismissed.**

    An appeal from the refusal of the lower court to continue an injunction to the hearing will be dismissed when it appears that the acts apprehended as a threatened injury and invasion of plaintiff's rights have become accomplished and completed and that the injury may now be measured by actual results and effects.

2. **Injunction—Sewerage—Damages Doubtful—Court's Non-Interference.**

    In this case an injunction is sought against the action of the city in emptying its sewer into a stream by certain of the landowners along its course where the sewer empties. The court affirming the doctrine of the city's liability for damages as laid down in *Metz v. Asheville,* 150 N. C., 748, and other cases cited, will not interfere by injunction, it being doubtful, from the record, as to the character and extent of the damage. *Cherry v. Williams,* 14 N. C., 452; *Vickers v. Durham,* 132 N. C., 880, cited and approved.

APPEAL from *Justice, J.,* from CALDWELL, denying, in May, 1909, the motion of plaintiff to continue an injunction to the hearing.

The plaintiffs, many in number, all owning land on Lower Creek, in the counties of Caldwell and Burke, sued the defendants, the town of Lenoir, its mayor and board of commissioners, to enjoin them from emptying the sewage of the town, through

its sewerage system, then being constructed, into Lower Creek.
The affidavits show that this creek partially encircles the town of
Lenoir, is sluggish in its flow; its bed has for several miles below
the town been filled up with sand and *debris;* its banks will aver-
age, for several miles, about eighteen inches or two feet above
the water, as it ordinarily flows in the creek; that the bottom
lands on both sides are about 200 to 250 yards wide; that these
lands are overflowed by the ordinary freshets in the creek, and
are lower in many places than the bed of the creek; that much of
the overflowed water cannot, for this reason, return to the
stream, but forms pools that become stagnant; that a consider-
able number of people live on the hills facing this stream, from
one-fourth to one mile from it; that there are a few springs,
from which some of the families obtain their drinking water,
reached by the overflow waters of the creek; that the bottom
lands are now too wet and sobby for cultivation, and are used
exclusively for the pasture of cattle; that the flow of said creek
is estimated to be between 12,000,000 and 17,000,000 gallons for
each twenty-four hours; that before building its sewerage sys-
tem much of the garbage and sewage of the town was carried by
the rain into Lower Creek and its tributary; that the town has
an estimated population of 3,500 people and was authorized to
construct the system, and its qualified voters approved an issue
of bonds by the city for this purpose; that the estimated amount
of sewage discharged through the system is 33,000 gallons per
day of twenty-four hours.

Affidavits of several physicians, some resident of the town and
county, others nonresident, differed in their opinion as to the
effect of the discharge of sewage and its being scattered over the
bottom lands in time of freshets, upon the healthfulness of the
homes of the plaintiffs and others living near the creek and
below the places of discharge.

His Honor, *Judge Justice,* after hearing the matter, declined
to continue the injunction, upon the grounds "that the pros-
pective injury complained of is not a certain injury which will
follow the action of defendants as a necessary consequence, but a
conjectural and apprehended injury." The plaintiff excepted to
the order and appealed to this Court. After the order of his
Honor was entered, the defendant finished its plant, and the
sewage is now being discharged in Lower Creek.

*Avery & Avery* and *Avery & Ervin* for plaintiffs.
*Jones & Whisnant, Lawrence Wakefield, W. C. Newland* and
*M. N. Harshaw* for defendants.

MANNING, J., after stating the case: It was admitted on the argument before us that, after his Honor declined to continue the injunction to the hearing, the town of Lenoir completed its system of sewerage, and the same has been in use now for several months; so that, what the plaintiffs apprehend as a threatened injury and invasion of their rights has become an accomplished and completed act, and may now be measured, not by uncertain conjecture and speculation, but by actual results and effects. The question presented is, therefore, an abstract question as to the injunction against a threatened injury, and, under *Pickler v. Board of Education,* 149 N. C., 221, perhaps the appeal should be dismissed; but, as the action is not finally disposed of, we proceed to discuss the questions argued before us.

In Dillon on Municipal Corp., sec. 1047, the learned writer says: "It is impossible to reconcile all the cases on the subject, and courts of the highest respectability have held that if the sewer, whatever its plan, is so constructed by the municipal authorities as to cause a positive and direct invasion of the plaintiff's private property, as by collecting and throwing upon it, to his damage, water or sewage which would not otherwise have flowed or found its way there, the corporation is liable." In Wood on Nuisances, sec. 427, the author says: "The right of a riparian owner to have the water come to him in its natural purity is as well recognized as the right to have it flow to his land in its usual flow and volume. . . . The pollution of water by artificial drainage, which causes sewage to flow into a stream, spring or well, whether done by a municipal corporation or an individual, constitutes a nuisance which entitles the owner to damages therefor, the rule being that a municipal corporation has no more right to injure the waters of a stream or the premises of an individual than a natural person." In Joyce on the Law of Nuisances, sec. 284, this author says: "Though a municipality or other body has power to construct and maintain a system of sewers, and although the work is one of great public benefit and necessity, nevertheless such public body is not justified in exercising its power in such a manner as to create, by a disposal of its sewage, a private nuisance, without making compensation for the injury inflicted or being responsible in damages therefor, or liable to equitable restraint in a proper case; nor can these public bodies exercise their powers in such a manner as to create a public nuisance, for the grant presumes a lawful exercise of the power conferred, and the authority to create a nuisance will not be inferred. It therefore constitutes a nuisance

151—27

to pollute and contaminate a stream by emptying sewage of a
city therein, rendering it unwholesome, impure and unfit for
use." The conclusion of these eminent writers is sustained by
the decisions of all the courts to whom this question has been
presented. We cite a few of the most apposite to the present
case: *Mansfield v. Balliett,* 65 Ohio St., 451; *Chapman v. Roch-
ester,* 110 N. Y., 273; *Morgan v. Danbury,* 67 Conn., 484; *Sei-
fert v. Brooklyn,* 101 N. Y., 136; *Jacksonville v. Doan,* 145 Ill.,
23; *Good v. Altoona,* 162.Pa. St., 493; *Owens v. Lancaster,* 182
Pa. St., 257; *Phinzy v. Augusta,* 47 Ga., 263; *Hutchins v. Frost-
burg,* 68 Md., 100; *Hasbell v. New Bedford,* 108 Mass., 208.
The doctrine of liability, with its limitation of damages, declared
in these authorities, is recognized by this Court in *Williams v.
Greenville,* 130 N. C., 93; *Downs v. High Point,* 115 N. C., 182;
*Hull v. Roxboro,* 142 N. C., 453; *Myers v. Charlotte,* 146 N. C.,
246; *Fisher v. New Bern,* 140 N. C., 506; *Metz v. Asheville,* 150
N. C., 748. While it is clear, under the doctrine of these cases,
that the town of Lenoir will be liable to the plaintiffs for such
damages as they can prove, under the decisions of this Court,
*supra,* that they have sustained and will sustain, yet much doubt
and uncertainty as to the extent of the damages probably result-
ing is created by the conflicting views of the learned experts and
others whose affidavits were presented to his Honor. In this
condition of the case, and in the absence of specific findings of a
jury covering these questions, we do not think his Honor erred
in refusing to continue the injunction. The principle control-
ling in such cases is stated by *Hoke, J.,* in *Cherry v. Williams,*
147 N. C., 452: "Courts are properly very reluctant to interfere
with the enjoyment of property by the owner, and there is a line
of cases in this State—and they are in accord with established
doctrine—to the effect that when the owner of the property is
about to engage in an enterprise which may or may not become
a nuisance, according to the manner in which it may be con-
ducted, courts will not usually interfere in advance to restrain
such an undertaking, and especially when the apprehended in-
jury is doubtful or contingent or eventual; but these decisions
will very generally be found to obtain in causes where the appre-
hended injury was threatened by reason of some industrial enter-
prise which gave promise of benefit to the community, affecting
rather the comfort and convenience than the health of adjoining
proprietors, and giving indication that adequate redress might
in most instances be afforded by an award of damages, as in
*Simpson v. Justice,* 43 N. C., 115; *Hyatt v. Myers,* 71 N. C.,
271; *Hickory v. Railroad,* 143 N. C., 451; *Durham v. Cotton*

*Mills,* 141 N. C., 615; *Vickers v. Durham,* 132 N. C., 880. "When the anticipated injury is contingent and possible only, or the public benefit preponderates over the private inconvenience, the courts will refrain from interfering." *Dorsey v. Allen,* 85 N. C., 358. It appears from *Vickers v. Durham, supra,* and it is well sustained by experts who have investigated the subject with the care and thoroughness its extreme importance demands, that there are well-known methods, approved and in use, by which the sewage of towns and cities is rendered harmless to health and inoffensive to the senses. If the injury to plaintiffs is as serious as they apprehended at the time this action was brought, the defendant town may discover it to be more economical to install one of these methods approved by science and use, rather than answer the judgments in favor of the plaintiffs.

For the reasons stated, it is not manifest that there was error in his Honor's ruling, and we affirm his order.

Affirmed.