JAMES D. DONNELL v. CITY OF GREENSBORO.

(Filed 13 December, 1913.)

1. Cities and Towns—Nuisance—Sewerage—Permanent Damages— Taking of Property—Constitutional Law.

    An act which directs or authorizes the taking of private property, in whole or in part, without compensation, is unconstitutional; and the creation of a nuisance by a city which permanently damages the riparian owner of lands on a stream below the place where the city sewage is emptied, by reason of offensive matter cast upon the lands, and odors affecting the convenience and health of the owner's home, is actionable, permitting a recovery against the city for such damages as are thereby permanently caused and which are evidenced by the depreciation in value of the lands.

2. Same—State Board of Health.

    Where a city has created a nuisance to the permanent damage of the lands of a riparian owner on a stream into which the city sewage is emptied, the owner may recover such damages,

though the city has therein complied with all the regulations of the State Board of Health, under authority conferred upon the latter by statute. Laws 1909, ch. 793. Distinction is made by HOKE, J., between the application of this principle to our own statutes and Constitution and those of England.

3. Cities and Towns — Nuisance—Trials—Damages—Evidence—Instructions—Harmless Error—Appeal and Error.

In this action to recover damages against a city for permanent injury to lands of a riparian owner upon a stream into which the city sewage is emptied, there was evidence that the plaintiff's land was also injured by objectionable matter being emptied into the stream from mill settlements located beyond the city limits: *Held,* the court properly instructed the jury to confine their inquiry as to damages to those arising by reason of the operation of defendant's sewerage system, and exclude damages which may otherwise have been caused, and no reversible error is found.

4. Verdicts, Inconsistent—Interpretation.

While a conflict in a verdict on essential and determinative matters will vitiate it, yet the verdict should be liberally and favorably construed with a view to sustaining it; and to obtain a proper apprehension of its meaning, resort may be had to the pleadings, evidence, and the charge of the court, and it thus appearing that the verdict and judgment in this case could be properly sustained upon two of the issues answered, and that injunctive relief had been refused upon other issues apparently in conflict, the judgment rendered below is sustained.

APPEAL by defendant from *Shaw, J.,* at August Term, 1913, of GUILFORD.

Civil action to obtain an injunction restraining defendant from emptying its sewage into Muddy Branch and North Buffalo Creek and to recover damages on account of same.

There was evidence on part of plaintiff tending to show that he lived 4½ miles east of Greensboro and was the owner of about 434 acres of land lying on or adjacent to North Buffalo Creek and Muddy Branch, a tributary of same, and flowing into North Buffalo Creek above plaintiff's land. That the land consisted of three tracts. One of 177 acres bought in 1870, lying on both sides of Buffalo Creek, having 20 acres bottom on one side and 30 acres on the other. A second tract of 197 acres ad-

joining the former. This tract does not abut directly upon the creek, but extends at one point to within 10 feet of same, and on this tract plaintiff's residence is situate, being about one-half mile from the creek. And a 60-acre tract adjoining the others, situate one-half mile from the creek and bought by plaintiff since institution of this present suit. That some time prior to the institution of the present suit the defendant had installed a permanent sewerage system, and was thereby discharging a large portion of its sewage into said streams above the lands of plaintiff, and by reason of same large quantities of offensive matter was cast out and upon plaintiff's bottom-lands, spoiling the grass and other produce of said lands and rendering same for certain purposes unfitted for profitable use, and further causing most offensive smells and odors, thereby creating a nuisance and rendering the said lands, and particularly the home of plaintiff, most uncomfortable, threatening the health of his family and causing great and permanent damage to his property.

Plaintiff further alleged and there was some evidence tending to show that before discharging the sewage into said stream defendant had not subjected the same to proper and adequate treatment or complied with the regulations in reference thereto, and by reason of the city's negligent default in this respect there had been increase in the damage suffered by plaintiff.

The defendant denied the existence of any nuisance, and alleged that if any damage was suffered by plaintiff, it was not near so great as claimed. It was alleged, further, that the defendant had constructed its sewerage system under authority conferred by the Legislature upon the city, and before emptying its sewage into said stream it was adequately and properly dealt with and subjected to treatment by septic tanks established and operated pursuant to regulations made by the State Board of Health under an act of the Legislature conferring full power to make the same. See Laws 1909, ch. 793, Pell's Supplement, sec. 3058a. By reason of said treatment the said sewage was rendered comparatively harmless and caused no appreciable damage to plaintiff's land.

It was further alleged that these streams afforded the natural drainage for all that portion of the city's sewage which was discharged into same, and that there was no increase of the damage by reason of said discharge. And further, that a large part of the conditions complained of were due and owing to the existence of two extensive mill settlements in the northern part of the city, from which the dye-stuffs and other objectionable matter are also emptied into said streams above the lands of plaintiff.

There was much testimony introduced in support of defendant's different positions, and it was insisted that on the facts in evidence no actionable wrong against the city had been shown.

The court charged the jury, excluding from their consideration any and all damages claimed by reason of the 197- and 60-acre tracts, it appearing that neither of these abutted on the creek, and the following verdict was rendered:

1. Has the plaintiff's property been damaged on account of the manner and method employed by the defendant in disposing of its sewage in North Buffalo Creek, as alleged? Answer: Yes.

2. What permanent damages is plaintiff entitled to recover of the defendant on account of the construction and operation of its said sewerage system and disposal plant? Answer: $1,000.

3. Has the defendant constructed its sewage disposal plants upon North Buffalo Creek and Muddy Branch in accordance with plants approved by the State Board of Health? Answer: Yes.

4. If not, did the defendant's failure to so construct said disposal plants create a nuisance, as alleged in the complaint? Answer: ........

5. Are said plants being operated in accordance with the rules and directions of the State Board of Health? Answer: Yes, in regard to Muddy Branch. No, in regard to Buffalo Creek septic tank.

6. If not, is the manner in which said plants are being operated creating a nuisance, as alleged in the plaintiff's complaint? Answer: No.

Judgment on verdict that plaintiff recover the $1,000 and costs, etc., and defendant excepted and appealed.

*Justice & Broadhurst for plaintiff.*
*A. Wayland Cooke and A. L. Brooks for defendant.*

HOKE, J., after stating the facts: On the first and second issues and by reference to the pleadings, the evidence and the charge of the court, the plaintiff has been allowed to recover $1,000, the damage done his property by the creation and maintenance of an actionable nuisance on the part of defendant, and on careful consideration of the record we find no reason for disturbing the result of the trial.

The decisions of this State are in approval of the principle that the owner can recover such damage for a wrong of this character, and that the right is not affected by the fact that the acts complained of were done in the exercise of governmental functions or by express municipal or legislative authority, the position being that the damage arising from the impaired value of the property is to be considered and dealt with to that extent as a "taking or appropriation," and brings the claim within the constitutional principle that a man's property may not be taken from him even for the public benefit except upon compensation duly made. This decision, announced in *Little v. Lenoir,* 151 N. C., 415, in an opinion by *Associate Justice Manning,* was reaffirmed and applied in the more recent cases of *Moser v. Burlington,* 162 N. C., 141; *Hines v. Rocky Mount,* 162 N. C., 409, and is sustained, we think, by the great weight of authority in this country. *Winchell v. Wauseka,* 110 Wis., 101; *Bohan v. Port Jervis,* 122 N. Y., 18; *Joplin Manufacturing Co. v. City of Joplin,* 124 Mo., 129; *Village of Dwight v. Hayes,* 150 Ill., 273; *Mackwordt v. City of Guthrie,* 18 Okla., 32; *Platt v. Waterburg,* 72 Conn., 531.

The courts of Indiana and probably cases in one or two of the other States seem to have adopted the contrary view. In the case from Indiana to which we were more particularly referred, *City of Valparaiso v. Hagen,* 153 Ind., 237, the question more directly presented was the right of certain riparian

owners to an injunction against the discharge of the sewage into the streams, rather than the right of recovery for damages suffered. To the extent, however, that this and other cases of like kind tend to uphold the position that any and all recovery is denied for wrongs of this character where the acts complained of are done pursuant to governmental authority, they are not, in our opinion, in accord with the better reason, nor, as stated, with the weight of well considered authority.

We do not understand that the decision of the United States Supreme Court in *Northern Transportation Co. v. City of Chicago,* 9 U. S., 635, in any way militates against our present ruling. In that case the city of Chicago on the extension of LaSalle Street, acting under proper legislative authority, was excavating a tunnel under the Chicago River. The work was being done with due care and skill and, so far as appears, in the only feasible manner. The plaintiff sued, claiming damages because the city in doing the work had obstructed certain entrances giving access to plaintiff's property. Recovery was denied on the recognized ground that mere consequential damage arising from the lawful use of one's own property or in the lawful exercise of governmental functions is not recoverable. And the Court, adverting to the principle, held that a temporary inconvenience arising from work of that character and done in this way was not such an encroachment upon the plaintiff's property as could be considered a taking within the meaning of the constitutional principle. But not so here; the verdict, as we have seen, on the first and second issues having established that defendant has created and maintained an actionable nuisance, constituting a direct invasion of the proprietary rights of the owner and permanently impairing the value of his property to the amount of $1,000. In such case, and except as affected by the existence of certain rights peculiar to riparian ownership, a recovery does not seem to depend on whether the damage is caused through the medium of polluted water or noxious air; the injury is considered a taking or appropriation of the property to that extent, and compensation may be awarded. *Brown v. Chemical Co.,* 162 N. C., 83.

If it be conceded, therefore, as defendant contends, that the entire right of supervision and control of all streams in cases of this kind has been conferred on our State Board of Health, by Laws 1909, ch. 793, and that defendant has complied with all of the regulations made pursuant to the statute, the right of plaintiff to recover to the extent allowed in this instance would be in no wise affected. On this subject the decisions of the English courts in apparent contravention of the position are not entitled to that persuasive force usually and deservedly allowed them here, for the reason that in England the power of Parliament is supreme. It is not under the constitutional restraints protecting the rights of individuals which prevail in this country and which are made the basis of our present decision. Recognizing this, these acts in almost all instances make provision for compensation to individuals who are injured in carrying out their measures; but where they do not, and are clearly incapable of such interpretation, no recovery of any kind may be allowed in the courts. This constitutes, perhaps, the chiefest difference in our systems of government, and the decisions of the English courts, therefore, interpreting acts of Parliament in reference to this and kindred questions, are not as a rule safe guides to correct conclusion with us.

There is no objection open to defendants on their evidence to the effect that Buffalo Creek and Muddy Fork afford the natural drainage to all that portion of the city of Greensboro from which the sewage is emptied into said streams, nor by reason of the fact that there are, north of the city and outside of the corporation, two extensive mill settlements from which objectionable matter is also emptied into these streams. In the careful and comprehensive charge of the court these sources of contamination and any and all effect from them were excluded from consideration, and the jury were confined to the damages arising by reason of operation of defendant's sewerage system, and not otherwise.

The only perplexity presented in the record arises from the apparent conflict in the findings of the jury on the first and second and on the fifth and sixth issues. It is well understood

that a conflict in a verdict on essential and determinative issues
will vitiate, but it is also well recognized that a verdict should
be liberally and favorably construed with a view to sustaining
it if possible, and that in order to a proper apprehension of its
significance resort may be had to the pleadings, the evidence,
and the charge of the court (*Richardson v. Edwards,* 156 N. C.,
590; *S. v. Murphy,* 157 N. C., 614), and in this instance, on
perusal of the record, it will clearly appear that the fifth and
sixth issues were framed and submitted with a view chiefly of
determining the plaintiff's right to injunctive relief, his Honor
being of opinion that this right would only exist in case of sub-
stantial damage arising from the negligent failure of the de-
fendant and its agents to properly operate the system in accord-
ance with the authoritative regulations established by the State
Board of Health. We are not prepared to differ from this view
of his Honor (see *Morse v. City of Worcester,* 139 Mass., 389).
But as no injunction was allowed in the case, the question is
not presented, and it further appears that his Honor was care-
ful in directing the jury that their finding on the fifth and sixth
issues should not be allowed to affect their consideration of the
first and second.

We are not unmindful of the suggestion also appearing from
the facts in evidence that there are thirty or forty suits of like
kind against the city dependent on the determination of the
present action, and that if recoveries are allowed, a burdensome
liability may be established.

Recognizing the importance of the principle involved and the
practical effect of its application in the present instance, we
have given the cause our most careful consideration, and, hav-
ing done this, we must administer the law as we are enabled to
see it, and trust to the moderation and good sense of our juries
to make fair and righteous adjustment of the conflicting inter-
ests involved.

There is no error, and the judgment as entered on the ver-
dict is

Affirmed.