### T. E. AND E. P. COOK v. THE TOWN OF MEBANE.

(Filed 27 January, 1926.)

**1. Water and Watercourses—Riparian Rights—Mills.**

An upper riparian owner of land on a stream may reasonably use the waters thereof for domestic purposes, and not otherwise diminish its flow to the injury of the lower proprietor, or its substantial use to the injury of a water mill, which has been built on the stream below.

**2. Public Health—Water and Watercourses—Municipal Corporations— Sewage—Cities and Towns—Nuisance—Pollution of Stream.**

The pollution of a stream by a municipality emptying its sewage therein, causing damage to a lower proprietor, affecting the operation of his water mill operated for gain by impairing the health of his employees thereat, subjects the municipality to an action by the lower proprietor for damages by the nuisance thereby caused.

**3. Same—Constitutional Law—State Board of Health—Government.**

Where a municipality empties its sewage into a stream, to the damage of the lower proprietor thereon, directly causing ill health to the lower proprietor and his family, and to those operating his water mill thereon, to the substantial impairment of its value, is the taking of private property for public use inhibited by the organic law, without just compensation, and the municipality is liable to the lower proprietor for damage to his property he has sustained, caused by the nuisance, and the approval of this method by the State Board of Health, as it may affect the public health, is no valid defense to the action.

**4. Nuisance—Water and Watercourses—Damages—Health.**

Where a municipality discharges its sewage into a stream and pollutes its waters so as to cause it to give off offensive odors to the diminution in value of the lands of the lower proprietor, it is a nuisance for which the lower proprietor may recover his damages.

**5. Same—Evidence—Damages.**

Where damages are sought in an action against a city alleged to have been caused to plaintiff's water mill by diminishing the flow of and polluting the mill stream, evidence that other mills in the locality had been shut down is incompetent, unless there is evidence that it was from the same cause.

**6. Appeal and Error—Evidence—Trials—Harmless Error.**

Exclusion of evidence is not reversible error if the evidence ruled out has been thereafter substantially admitted upon the trial.

**7. Damages—Loss of Profits.**

Where the plaintiff's established business has been impaired by an actionable nuisance of the defendant, evidence of the loss of profits caused by defendant's act is competent upon the question of the plaintiff's damage to his property.

**8. Evidence—Damages—Nuisance—Health.**

Where the plaintiff's action is for damages for injury to the value of his water mill caused by the emptying of sewage by a city into the mill stream, evidence of the impaired health caused thereby, the defendant's act before and after its commission, is competent.

**9. Same—Injury to Lands—Water Mill.**

Where the plaintiff has been damaged by the defendant city emptying its sewage into his mill stream, in diminution of the value of the mill long since established, the damages recoverable extend to the injury caused to the entire tract of land, consisting in this case of one hundred and sixty acres.

**10. Instructions—Construed as a Whole—Appeal and Error.**

A charge will be construed as a whole in its related parts, and an instruction in part that the plaintiff may upon certain evidence recover the entire damage sought in the action will not be held for error if so construed it appears that the plaintiff was required to reasonably reduce the damage or nuisance, or the injury to his property, which the law required under the circumstances.

**11. Judgments—Condition—Verdict.**

Where the trial judge has intimated he would let the verdict stand if the defendant against whom the verdict was rendered would agree to make certain provisions of the sewage into the mill stream of the plaintiff, causing injury to his property, which the defendant refused to do, the judgment upon the verdict is not objectionable as being conditional.

APPEAL by defendant from *Calvert, J.,* and a jury, at Second May Term, 1925, of ALAMANCE. No error.

The statement of case on appeal is as follows:

"The plaintiffs allege that certain real property, consisting of 160 acres of land and a mill site owned by them had been damaged by the defendant. They allege that the defendant had installed a system of water works and that it took the water from a stream that flowed down to and through the lands of the plaintiffs, and so diminished the flow of said stream that it damaged both the land and mill site of the plaintiffs. They alleged that the defendant had installed a sewerage system and that the sewer outlet for a part of said town emptied into a stream that flowed down to and into the stream that ran through the lands of the plaintiffs and caused them injury and damage.

"The defendant answered and alleged that it owned land situate upon the stream that flowed down to the lands of the plaintiffs, above the lands of plaintiffs, and that it had a right to use the water, and that the amount it took caused the plaintiffs no damage. It admitted that it had installed a sewer system, but averred that it had so installed the same and provided for an outlet for the same as that its system was approved by the health authorities and engineers, and it alleged that the manner in which said sewer system was installed and maintained did not in any way affect the plaintiffs, and it denied all allegations of the plaintiffs that it had endamaged them in any way."

The issues submitted to the jury and their answers thereto were as follows:

"1. Are the plaintiffs the owners of the land described in the complaint? Answer: Yes.

"2. Has the defendant wrongfully and unreasonably diverted and used the water from Mill Creek? Answer: Yes.

"3. What permanent damages are the plaintiffs entitled to recover of the defendant by reason of such use and diversion? Answer: Yes, $4,000.

"4. Have the plaintiffs been damaged by the installation and maintenance of a sewerage system by the defendant as alleged in the complaint? Answer: Yes.

"5. What permanent damages are the plaintiffs entitled to recover of the defendant on account of the installation and maintenance of said sewerage system? Answer: Yes, $6,000."

Defendant made numerous exceptions and assignments of error to the admission and exclusion of evidence, refusal of prayers for instructions and to the charge of the court below, and from the judgment rendered appealed to the Supreme Court.

*J. Elmer Long and McLendon & Hedrick for plaintiffs.*
*T. C. Carter and Brooks, Parker & Smith for defendant.*

CLARKSON, J. The complaint of plaintiffs is two-fold: (1) That defendant diverted water from Mill Creek which flowed through their land and damaged their land and mill site; (2) that after taking the water from Mill Creek for municipal purposes that below this intake the defendant emptied its sewerage into Susan Mebane Branch, which flowed into Mill Creek and damaged their land and mill site. Defendant both diverted and polluted the water that ran through plaintiffs' land to their damage.

Defendant denied that there was any appreciable amount of water taken or sewage disposal that emptied into the stream that would be actionable and cause damage to plaintiffs, and alleged that it had a right as a riparian proprietor to divert the water. That the sewage disposal outlet was approved by its engineer and the health authorities.

On these contentions the issues were framed and submitted to the jury.

(1) As to diverting water, the principle is well settled in this State and reiterated in *Smith v. Morganton,* 187 N. C., p. 803: "That a riparian proprietor is entitled to the natural flow of a stream running through or along his land in its accustomed channel, undiminished in quantity and unimpaired in quality, except as may be occasioned by the reasonable use of the water by other like proprietors. *Pugh v. Wheeler,* 19 N. C., 50; *S. v. Glen,* 52 N. C., 321; *Walton v. Mills,* 86 N. C., 280; *McLaughlin v. Mfg. Co.,* 103 N. C., 100; *Adams v. R. R.,* 110 N. C., 326; *Durham v. Cotton Mills,* 141 N. C., 615; *Harris v. R. R.,* 153 N. C., 542." *Rouse v. Kinston,* 188 N. C., p. 24. *Ruffin, C. J.,* in *Pugh v. Wheeler, supra,* p. 55, speaking to the subject of diverting water, says: "If one build a mill on a stream, and a person above divert the water, the owner of the mill may recover for the injury to the mill, although before he built it he could only recover for the natural uses of the water, as needed for his family, his cattle and irrigation."

(2) As to polluting water, it was said in *Finger v. Spinning Co.,* 190 N. C., p. 78: "The fact that this may call for the expenditure of large sums of money by defendants cannot be considered as justifying the continuance of a trespass upon or a nuisance to the lands of plaintiff by defendants. As said by *Chief Justice Clark,* in *Rhyne v. Mfg. Co., supra* (182 N. C., 489), 'Defendants must attain its ends, advance its interests, or serve its convenience by some method, whether in improving its sewerage system or otherwise, which shall be in accordance with the age-old maxim that a man must use his own property in such a way as not to injure the rights of others, *sic utere tuo, ut alienum non lœdas.'* "

*Hoke, J.,* in *Donnell v. Greensboro,* 164 N. C., 334, speaking to the subject of sewage disposal, says: "The decisions of this State are in approval of the principle that the owner can recover such damage for a

wrong of this character, and that the right is not affected by the fact that the acts complained of were done in the exercise of governmental functions or by express municipal or legislative authority, the position being that the damage arising from the impaired value of the property is to be considered and dealt with to that extent as a 'taking or appropriation,' and brings the claim within the constitutional principle that a man's property may not be taken from him for the public benefit except upon compensation duly made. This decision, announced in *Little v. Lenoir,* 151 N. C., 415, in an opinion by *Associate Justice Manning,* was reaffirmed and applied in the more recent cases of *Moser v. Burlington,* 162 N. C., 141; *Hines v. Rocky Mount,* 162 N. C., 409; and is sustained, we think, by the great weight of authority in this country. *Winchell v. Wauseka,* 110 Wis., 101; *Bohan v. Port Jervis,* 122 N. Y., 18; *Joplin Mfg. Co. v. City of Joplin,* 124 Mo., 129; *Village of Dwight v. Hayes,* 150 Ill., 273; *Mackwordt v. City of Guthrie,* 18 Okla., 32; *Platt v. Waterbury,* 72 Conn., 531." *Rhodes v. Durham,* 165 N. C., 679; *Pennington v. Tarboro,* 184 N. C., 71; *Dayton v. Asheville,* 185 N. C., 14; *Sandlin v. Wilmington,* 185 N. C., 257.

There are certain methods by which the sewage disposal of municipalities can be rendered practically harmless by establishing septic tanks, sewerage filters and contact bed system, etc. There is no evidence that these precautionary methods were pursued by the town of Mebane in the present case. The only treatment the sewage got was that afforded by nature—purification as it flowed down the stream. This method was approved, from the evidence of defendant, by the State Health Department, so far as health goes. This approval did not concern nuisances. Under Eminent Domain, C. S., ch. 33, if the town of Mebane has no charter rights on the subject, the right and remedy is given to condemn necessary land for the purpose. C. S., 1706 (2) "Municipalities operating water systems and sewer systems," etc. *Rouse v. Kinston,* 188 N. C., 1.

It was in evidence that defendant had purchased about an acre of land lying on the waters of Mill Creek. In the deed to the defendant was also conveyed "Right of ingress and egress to lay water mains over the said lands; all of the water rights above the said property and below the said property owned by the said C. F. Cates and other appurtenant easements." This land, purchased by defendant from C. F. Cates, was above plaintiffs' land on Mill Creek.

The judge's charge contained the following: "Has the defendant wrongfully and unreasonably diverted and used the water from Mill Creek? Every riparian owner, that is, every owner of land adjoining a natural stream is entitled to the natural flow of water of a running stream through or along his land in its accustomed channel, undiminished in quantity and unimpaired in quality except as may be occasioned by

reasonable use of the stream by other like proprietors or owners. A riparian owner has the right to make use of water beneficial to himself on riparian land which his situation makes possible, so long as he does not inflict any substantial injury upon those below him, but as all riparian owners have an equal right to use the water each must exercise his rights in a reasonable manner and to a reasonable extent so as not to interfere unnecessarily with the rights of others." This charge on this aspect gave defendant all that it could ask under the law.

In *Harris v. R. R.,* 153 N. C., p. 544, it is said: "They may use the water for any purpose to which it can be beneficially applied, but in doing so they have no right to inflict *material* or substantial injury upon those below them. *Williamson v. Canal Co.,* 78 N. C., 157; Gould on Waters, pp. 394-395; Angell on Water Comrs., pp. 96-97 (7 ed.)."

The court charged what constituted a nuisance: "Now, gentlemen, a nuisance is anything which works hurt, inconvenience or damage, or which essentially interferes with the enjoyment of life or property, and the pollution of water by the discharge into a stream of matters which are offensive in odor or which renders it unfit for such use as it had heretofore been reasonably put to, is a nuisance."

The court's definition is the one generally accepted. 29 Cyc., L. & P., p. 1152. "The term 'nuisance' means literally annoyance; anything which works hurt, inconvenience, or damage, or which essentially interferes with the enjoyment of life or property."

The first six assignments of error.—E. P. Cook, plaintiff, was asked on cross-examination: "(1) Q. When did the Scott Mill stop operation? (2) Q. Is the Vincent Mill now running? (3) Q. How long has it been since the Vincent Mill has been running? (4) Q. Is that mill now running? (5) Q. How long since that mill was stopped? (6) I know the Cooper Mill at Carr, which was moved to Mebane. It was operated by an oil engine and they moved the mill to Mebane and it is now operated in Mebane."

The court below in excluding the evidence "stated that the defendant might be able to lay a foundation which would make the evidence tending to show that other water mills in the vicinity of the plaintiffs' mill had stopped operation competent, but that the court was excluding *it at that time.*"

In the future progress of the trial, there was no evidence tending to show that any of the mills named had shut down or ceased to operate on account of general economic conditions such as would naturally affect plaintiffs' mill, which was run mostly by water power. E. P. Cook, one of the plaintiffs, testified that their mill was shut down because of the diversion and pollution of water by defendant in Mill Creek. That was

the issue before the jury. Witness could not be expected to know why other mills, with which he had no connection, had ceased to operate. But the witness Cook later was asked by defendant two general questions covering the same proposition: "Q. Don't you know that, regardless of any water powers or sewerage systems that the mill business, the kind you were doing in that neighborhood and section, has gone all to pieces and decreased very materially in recent years with everyone about there? Answer: Mill business kept up, I know that our mill business had not. Q. I ask you if just previous to and at the time Mebane installed its water works and sewerage system and since that time, if market conditions have not been such as that mills similar to the one you were operating, located in that vicinity and doing a similar business to that done by you, have not had to cease operations, or have been unable to operate properly? Answer: I will answer that question by saying I do not think there is a mill in that country would have had to close down on account of not having to sell their produce. They have been owned and operated by men who did not give them attention."

Later, defendant's witness, J. E. Sellars, on direct-examination, testified: "I operated this mill of mine since 1913, but do not operate the wheat part of the mill now, because I did not feel able to buy the modern machinery to compete with the older mills, and I could not give it my personal attention and, with the incompetent millers, I could not make anything. I refer, when I say competition of other mills to the mills that are making up-to-date, self-rising flour with mixtures and bleachers. There is one of those mills in Mebane."

If it was error to exclude the specific questions asked, as contended by defendant, it can't complain. A general question was asked by defendant embodying substantially the specific questions and answered without objection.

In *Ledford v. Lumber Co.*, 183 N. C., p. 616, it is said: "The erroneous admission of evidence on direct examination is held not to be prejudicial when it appears that, on cross-examination, the witness was asked substantially the same question and gave substantially the same answer." *Hamilton v. Lumber Co.*, 160 N. C., 48; *Gentry v. Utilities Co.*, 185 N. C., 287; *Hanes v. Utilities Co., post,* 13.

By analogy, the erroneous exclusion of evidence on cross-examination is held not to be prejudicial when it appears later, on cross-examination, the witness was asked general questions covering substantially the specific questions and they were answered without objection.

These assignments of error cannot be sustained.

We do not think assignments of error 7, 8, 9, 17, 18 and 21 present any new or novel proposition of law or are prejudicial, and they cannot be sustained.

Cook *v.* Mebane.

R. C. Harris, a witness for plaintiffs, was asked "What sort of patronage did you have at the mill during the time you were there?" Tenth assignment of error.

8 R. C. L., p. 649, says: "Where a regular established business is injured, the average profits that the business is then earning and has earned are competent as to the loss of profits." There could be no profit without patronage. The question was competent—the probative force for the jury.

Assignments of error 11, 12, 13, 14 and 15 we think competent on the question of damage. It was competent to show by the witnesses for plaintiffs, R. C. Harris and J. H. Payne, that on account of the offensive odors, the condition of the water and sewer, they could not work at the mill.

J. F. Kenyon, witness for plaintiff, without objection, stated: "I lived at the same house both times I was there. Prior to 1 January, 1923, I had not observed any stagnant pools of water nor observed any mosquitoes. Both times that I was there I lived in the same house. Before 1 January, 1923, I had never observed any stagnant pools of water or observed any mosquitoes there. Q. After 1 January, 1923, state what you observed in that respect? Ans.: We were there all told through three summers and the first two summers previous to 1923, we, of course, spent our evenings on the porch and it was a nice pleasant place to stay, but this summer (1923) by some means the mosquitoes were so bad we could not stay on the porch." The following question was asked witness: "Did you have any sickness there after 1 January, 1923?" The sewerage system was completed prior to that time. In the summer of 1923, he stated he had malaria.

In *Rouse v. Kinston,* 188 N. C., 14, it was said: "The benefit to the health of the people who lived on the plantation is more important than the increased facilities of the land for producing crops, and it is clearly competent in fixing the market value of the land to show before and after the artesian wells were sunk the condition of the health of the inhabitants who lived on the land. Good health can more easily create wealth. It gives strength and vigor to work." The assignment of error in the *Rouse case* was similar to the present. Permitting evidence tending to show condition of farm, "including in this evidence statements as to health conditions on said farm and vicinity, complaints of tenants on account of water and as to health conditions."

This assignment of error, 16, cannot be sustained. Nor can the 17th and 18th, for the same reason.

The 19th assignment of error is as follows:—Prayer for instruction: "I charge you there is no evidence in this case that the defendant has brought about any condition that has resulted in decreasing the value

of that part of plaintiffs' property referred to as containing 100 acres and called the farm property."

The complaint, article 2, alleges that plaintiffs are the owners of the tract of land, describing it, containing 180 acres more or less. The defendant answering says: "That article 2 of the complaint is not denied."

E. P. Cook, testified: "With my brother, T. W. Cook, I own tract of land containing 160 acres described in complaint, which we purchased from L. Banks Holt, 1904. It is watered by a stream known as Mill Creek, and when we purchased it, it had a mill upon it known as the Banks Holt Mill. We bought the land for the mill. We were not farmers especially, we were mill men."

The plaintiffs alleged that at the time of the purchase of the land, there was located thereon and on the waters of Mill Creek a grist and flour mill, operated by water power, and had been in constant use for more than 100 years. In answer, the defendant says: "That as to the facts and allegations set out in article 3 of said complaint, the defendant admits that the plaintiffs run and operate a mill upon their property near the town of Mebane and upon Mill Creek for the purpose of manufacturing flour and grain products." As to the other allegations, they are not sufficiently informed and deny the same.

The tract was bought and treated as a whole. To make arbitrary division in such a case would lead to confusion. The entire evidence of the location of the mill, back water, location of the houses on the farm, etc., was before the jury. Defendant, on cross-examination, brought out the same evidence from E. P. Cook, "We bought 160 acres of land with a mill on it in 1904." True, in estimating the damage, Cook said: "In my opinion the value of the mill, water power, dam and race and stuff like that, was about $25,000 before 1 January, 1923, when the city of Mebane began taking water and putting in sewerage. It is not worth anything now as a mill plant. I believe our land was worth $100 an acre, and we had 160 acres. I would say 100 acres outside of mill site, and that would be $10,000, I doubt whether it would bring $20 an acre now."

H. P. White, in estimating the damage, made the division like Cook. We cannot hold this as prejudicial error. This assignment of error cannot be sustained.

The 20th assignment of error.—Prayer for instruction: "I charge you that there is no evidence that the defendant has caused and brought about any condition that has produced sickness on the part of plaintiffs or to persons residing on plaintiffs' property." This assignment of error cannot be sustained. There was some evidence to go to the jury—the probative force was for them.

This action is not brought to recover damages for sickness, but for injury done to the property—a taking of property. *Hines v. Rocky Mount,* 162 N. C., 409; *Metz v. Asheville,* 150 N. C., 748; *Williams v. Greenville,* 130 N. C., 93, and that line of cases, on this aspect of the case, are not applicable.

In *Rhodes v. Durham,* 165 N. C., p. 681, *Hoke, J.,* speaking to the subject, says: "It is contended for defendant that damages of this character should not be allowed, because the property of plaintiff does not abut directly upon the stream, and there has been no physical invasion of plaintiff's rights in the same; but this position, in our opinion, cannot be sustained. The property injured extends to within 50 yards of the stream, and the evidence tends to show and the jury has established that defendant wrongfully maintains there permanent conditions amounting to a nuisance, bringing plaintiff's property directly within the harmful effects and sensibly impairing its value. In *Donnell v. Greensboro, supra* (164 N. C., 330), the Court, in speaking to a similar suggestion, said: 'In such case, and except as affected by the existence of certain rights peculiar to riparian ownership, a recovery does not seem to depend (at all) on whether the damage is carried through the medium of *polluted water or noxious air;* the injury is considered a taking or appropriation of the property to that extent, and compensation may be awarded.' . . . And 1 Lewis on Eminent Domain (3 ed.), sec. 230, says: 'The owner of land has a right that the air which comes upon his premises shall come in its natural condition, *free from artificial impurities.* This right has its correlative obligation, which is that one must not use his own premises in such a manner as to discharge into the atmosphere of his neighbor *dust, smoke, noxious gases, or other foreign matter which substantially affect its wholesomeness,'* etc." *Moser v. Burlington,* 162 N. C., p. 144.

Defendant says: "The defendant's twenty-second and twenty-seventh assignments of error must be considered together. The issues being tried were two: (a) Alleged damage for diversion of waters; (b) Alleged damage for pollution of waters. The plaintiffs examined sixteen witnesses and defendant examined nineteen witnesses, and among them many professional men and experts. The law provides that the trial judge 'shall state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon.' C. S., 564. On the question of diversion, the trial judge's charge was: 'Now, gentlemen, if the plaintiffs are entitled to recover anything, then they are entitled to recover their past, present and prospective damages, if any, directly attributable to the alleged diversions and use of the water from Mill Creek; that is, as to the measure of damages on this third issue, you will answer it what you find from the evidence, the burden of proof

being upon the plaintiffs, what you find from the evidence is the de-
crease, if any, in the reasonable market value of the property of plain-
tiffs directly attributable to the alleged diversion and use of the water
from Mill Creek.'" But the charge must be taken as a whole and not
disconnectedly. *Hanes v. Utilities Co., supra.* The court goes on
and charges: "Now, as to that issue, I charge you that there is a duty
on the plaintiffs to diminish, as far as they reasonably can, the damage
they allege they suffered from the diversion of the water. Even if you
find from the evidence that there was and is a diversion of the water
so as to prevent the running of the mill as it was operated before the
alleged diversion, yet this would not necessarily justify abandoning the
mill. It would still be their duty to do what they reasonably could to
diminish the damages by the use of other power to substitute the alleged
loss of water power, the damages, if any, recoverable on this issue being
limited to the decrease in value of property directly attributable to the
alleged diversion of water, taking into consideration the extent, if any,
to which the water power to plaintiffs' mill was diminished by the
alleged diversion of water. Then as to the fifth issue, gentlemen, if you
answer the fourth issue—'have plaintiffs been damaged by the installa-
tion and maintenance of the sewerage system by the defendants as
alleged in the complaint?'—If you answer that fourth issue 'No,' then
you need not consider and answer the fifth issue or question, but if you
answer the fourth issue 'Yes,' then you will proceed to answer the fifth
issue, which is 'What permanent damages are plaintiffs entitled to re-
cover of defendant on account of the installation and maintenance of
said sewerage system?' As to this issue, gentlemen, if you come to
answer it at all, you will answer it what you find from the evidence
was the decrease, if any, in the reasonable market value of the property
of the plaintiffs directly attributable to the alleged pollution of the
creek. The burden of proof upon that issue is upon the plaintiffs." We
think the charge fully comes within the decisions on the subject of dam-
ages in actions of this kind.

In *Moser v. Burlington,* 162 N. C., p. 144, *Hoke, J.,* in speaking to the
subject, said: "On the question of defendant's liability, the cause has
been properly tried in the light of these principles, and, on the question
of damages, his Honor correctly applied the rule as it obtains with us,
that the damages are confined to the diminished pecuniary value of
the property incident to the wrong, *Metz v. Asheville,* 150 N. C., 748;
*Williams v. Greenville,* 130 N. C., 93, the evidence as to specific cases
of sickness in plaintiff's family *having been admitted and its considera-
tion allowed only as it tended to establish the existence of the nuisance
and the amount of damage done to the property."

A simple proposition—damages for diversion and pollution of water. An elaborate charge, more in detail and reiteration, may be often confusing.

In *Davis. v. Long,* 189 N. C., p. 136, 137, it was said: "We think the rule laid down in *S. v. Beard,* 124 N. C., p. 813, applicable here: 'It is true that the object of the charge is to state the law of the case to the jury, and to aid them in applying the facts to the law; but the manner in which this is done must be left, to a very great extent, to the good sense and sound judgment of the judge who tries the case.' In *Simmons v. Davenport,* 140 N. C., p. 410, *Walker, J.,* said: 'In the absence of any such request, we cannot say that it was reversible error for the court to have charged in the general terms employed by it, especially in a case like this one, which involves so little complication that a jury could not well have misunderstood the legal aspect of the matter. If a party desires fuller or more specific instructions, he must ask for them and not wait until the verdict has gone against him and then, for the first time, complain of the charge. *Kendrick v. Dellinger,* 117 N. C., 491; *McKinnon v. Morrison,* 104 N. C., 354; *S. v. Debnam,* 98 N. C., 712; Clark's Code (3 ed.), pp. 535 and 536.' *S. v. O'Neal,* 187 N. C., 24. The case is not complicated as to the law or facts. The jurors are presumed to be men of 'good moral character and sufficient intelligence.' They could easily understand the law as applied to the facts." *Hauser v. Furniture Co.,* 174 N. C., p. 463. The principle laid down in *Nichols v. Champion Fibre Co.,* 190 N. C., 1, and like cases, are not applicable to the present case.

The other assignments of error relate to what has been passed on or are not prejudicial, and cannot be sustained.

The following appears of record: "Upon the coming in of the verdict, the defendant moved to set aside the verdict and for a new trial. After hearing the argument of counsel, his Honor intimated that he would set aside or materially reduce the verdict on the fifth issue if the defendant would agree to install, within a time to be agreed upon, a sewerage disposal plant of modern and generally approved design so as to abate the nuisance created by the present method of sewage disposal. After the defendant had considered his Honor's suggestion, it was announced that the defendant could not accept the court's offer and thereupon his Honor signed the judgment set out in the record." This matter was in the sound discretion of the court below. The judgment rendered was not conditional.

It may not be amiss, for the benefit of municipalities, to state the position taken by health experts in matters of this kind: "It is agreed by sanitarians that the objects to be attained are, protection from offensive odors and from the danger of infection from the pathogenic bacteria

HANES *v.* UTILITIES CO.

which are commonly present in raw sewage. Approved artificial disposal of sewage includes: the removal of solids and oxidation, by sedimentation tanks, septic tanks, chemical precipitation plants, broad irrigation, intermittent filtration through sand, and by sprinkling filters. In addition it is often necessary to sterilize the effluent by the application of liquid chlorine or chloride of lime. There are innumerable modifications of these processes in use but each of them requires continuous and competent control. The most elaborate plant will be ineffective if it is neglected."

The whole matter was practically one of fact for the jury. The judge charged the jury to which there was no exception: "You have been permitted by the court to inspect the premises involved in this litigation, and it is my duty to and I do charge you that you are not to consider anything that you saw as substantive evidence, but what you saw upon such visit to the premises is to be considered by you only in enabling you to understand the testimony of the witnesses."

The court below tried this important case with care and caution. We find no prejudicial or reversible error.

No error.