M. F. TEETER v. POSTAL TELEGRAPH-CABLE COMPANY.

(Filed 22 December, 1916.)

1. **Telegraphs—Easements—Rights of Way—Additional Burden—Compensation—Damages.**

   The construction of a telegraph company's lines upon a railroad right of way imposes an additional burden upon the fee-simple title to the lands which entitles the owner to compensation.

2. **Telegraphs—Easements—Rights of Way—Requisition of Right.**

   A telegraph company can only acquire an easement in lands for construction and maintenance of its lines by grant, or pursuant to the statutes, Revisal, secs. 1572, 1573, or by adverse and continuous use for

twenty years, the period of the acquisition by such user for five years, allowed to railroad companies by Revisal, sec. 394, not extending to telegraph companies.

**2. Limitation of Actions — Trespass — Continuous Trespass — Independent Acts.**

The statutory requirement that an action for damages for continuing trespass on lands shall be barred after three years from the date of the original trespass, by the use of the words "continuing trespass," refers to trespass upon real property, caused by structures permanent in their nature where the wrongful act, being continued and complete, causes continuing damages, or where injuries from like sources are caused, or by companies in the exercise of some quasi-public franchise, and was not intended to apply when every successive act amounted to a distinct and separate renewal of wrong.

**4. Same—Telegraphs—Easements—Rights of Way.**

Where a telegraph company has constructed its line of poles and wires along a railroad right of way on the lands of the owner more than three years next before the commencement of the owner's action for trespass, but within three years has constructed an additional line of its wires thereon and repaired its old line, replacing some of the old poles with new ones, in the same holes: *Held*, the plaintiff's right to damages for the construction of the old line is barred by the statute, but the wrongful maintenance of the old and the building of the new line was a separate and independent trespass for which permanent damages may be awarded it. Revisal, sec. 395 (3).

**5. Telegraphs—Easements—Rights of Way—Permanent Damages—Right to Repair.**

Upon payment of a recovery for permanent damages for a right of way in plaintiff's action of trespass against a telegraph company, the defendant, so far as the plaintiff is concerned, acquires the right to maintain its lines on the land for an indefinite period, and to enter on the same whenever reasonably required for the planting, repairing, and preservation of its poles and other property.

**6. Telegraphs—Easements—Rights of Way—Measure of Damages—Prospective Values.**

In admeasuring the damages for the imposition of an additional burden upon the plaintiff's land by the construction and maintenance upon a railroad right of way by the defendant telegraph company of its line of poles and wires, the inquiry is not confined to the diminution in value of the land as then used, but is extended to all the uses for which it is adapted or applied and which may be reasonably anticipated in the further use or development of the property; and under the circumstances of this case it is *Held*, that the inquiry should not be confined to the diminution of plaintiff's land as farming lands, but that its availability for factory sites was properly considered.

CIVIL ACTION to recover permanent damages for the erection and maintenance of a telegraph line, poles, wires, etc., on plaintiff's land, tried before *Long, J.,* and a jury, at April Term, 1916, of CABARRUS.

Defendant denied liability and pleaded the three years statute of limitations, Revisal, sec. 5, subsec. 3.

The summons seems to have been issued in December, 1914, or January, 1915, and there was evidence tending to show that the poles were originally placed on plaintiff's land and on the right of way of the North Carolina Railroad Company more than four years before that date, and that in 1909, owing to the fact that the Southern Railway, lessee of North Carolina Railroad, had constructed a double track, the defendant moved its poles and lines further out into plaintiff's field, where it was still maintained and operated, and that in 1914, not long before action instituted, defendant had repaired the portion of its line situate on plaintiff's land, putting in several new poles, these being put in the same holes as formerly and causing further damage and injury to said land.

On issues submitted, the jury rendered the following verdict:

1. Is the plaintiff M. F. Teeter the owner and in the possession of the lands over which the defendant constructed its telegraph line within the right of way of the railroad company?   Answer: "Yes."

2. Is the plaintiff's cause barred by the statute of limitations, as alleged in the answer?   Answer: "No."

3. What permanent damages, if any, is plaintiff entitled to recover of the defendant for the erection and maintaining of said telegraph line on his land as existing and in operation?   Answer: "$250."

Judgment on the verdict, and defendant excepted and appealed.

*J. W. Keerans, M. H. Caldwell, and L. T. Hartsell for plaintiff.*
*J. Lee Crowell and H. S. Williams for defendant.*

HOKE, J.   It is not denied by defendant that the telegraph line superimposed upon a railroad right of way is an additional burden which entitled the owner to compensation, *Hodges v. Tel. Co.,* 133 N. C., 225; *Phillips v. Tel. Co.,* 130 N. C., 513; but objection is made to the validity of plaintiff's recovery on the ground, chiefly, that his Honor should have held as a conclusion of law that, on the facts in evidence, plaintiff's cause of action is barred by the three years statute of limitations, Revisal, sec. 395, subsec. 3, the language being as follows: "Actions shall be brought within three years for trespass on real property. When the trespass is a continuing one, within three years from the original trespass, and not thereafter."

Speaking to this section in *Sample v. Lumber Co.,* 150 N. C., pp. 165-166, action for wrongful entry and cutting timber on another's land, the Court said: "True, the statute declares that actions for trespass on real estate shall be barred in three years, and when the trespass

50—172

is a continuing one such action shall be commenced within three years from the original tespass, and not thereafter; but this term, 'continuing trespass,' was no doubt used in reference to wrongful trespass upon real property, caused by structures permanent in their nature and made by companies in the exercise of some quasi-public franchise. Apart from this, the term could only refer to cases where a wrongful act, being entire and complete, causes continuing damage, and was never intended to apply when every successive act amounted to a distinct and separate renewal of wrong."

Referring to the language of the section and the interpretation of it suggested in that decision, the Court is inclined to the opinion that this is a continuing trespass within the meaning of the law, and for damages incident to the original wrong, and for that alone, no recovery could be sustained. But this is a suit for permanent damages, and on recovery and payment, so far as plaintiff is concerned, confers on the defendant the right to maintain its line on plaintiff's land for an indefinite period and to enter on the same whenever reasonably required for the "planting, repairing, and preservation of its poles and other property." *Caviness v. R. R., ante,* 305. It is a suit to recover for the value of the easement, which can pass to defendant only by grant or by proceedings to condemn the property pursuant to the statute, Revisal, secs. 1572-1573, or by adverse and continuous user for the period of twenty years.

In case of railroads, by section 394 of the Revisal this period has been reduced to five years, but there being no such statute as to telegraph companies, the common-law period of twenty years is required. *Geer v. Water Co.,* 127 N. C., pp. 349-353.

It was objected further for defendant that plaintiff, in giving his opinion as to the amount the value of the land was decreased by the imposition of the easement, was allowed, in describing his property, to base his estimate upon its value both for farming lands and its eligibility for factory sites, the land being used then only for farming; but the objection is without merit.

In *Brown v. Power Co.,* 140 N. C., 333, in reference to such an estimate, it was held, among other things: "In estimating its value, all the capabilities of the property and all the uses to which it may be applied or for which it is adapted may be considered, and not merely the condition it is in at the time and the use to which it is then applied by the owner."

In *R. R. v. Armfield,* 167 N. C., pp. 464-466, the Court quotes, with approval, from Pierce on Rys., p. 217, as follows: "The particular use to which the land is applied at the time of the taking is not the test of its value, but its availability for any valuable or beneficial uses to

which it would likely be put by men or ordinary prudence should be taken into account. It has been well said that the compensation 'is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business and wants of the community, or such as may reasonably be expected in the immediate future.' But merely possible or imaginary uses, or the speculative schemes of its proprietor, are to be excluded." And the principle is applied and fully approved in the recent case of *R. R. v. Mfg. Co.,* 169 N. C., 156.

We find no error in the proceedings, and the judgment for plaintiff is affirmed.

No error.