EMMA C. IVESTER AND HUSBAND, R. B. IVESTER, v. CITY OF
WINSTON-SALEM.

(Filed 1 February, 1939.)

**1. Eminent Domain § 8—**

It is fundamental law in this State, grounded in equity and justice, that private property may not be taken, even for a public purpose, without the payment of just compensation.

**2. Eminent Domain § 2: Nuisance § 3: Municipal Corporations § 16—
Pollution of air resulting in depreciation of value of land constitutes taking.**

The operation of a municipal sewage disposal plant, incinerator and abattoir, resulting in the discharge of noxious odors, ashes and cinders into the air, and the attraction and breeding of rats, mosquitoes and other vermin, to the extent that the value of contiguous private lands is depreciated, is a taking of such private lands to the extent of the damage, and the municipality may be required to pay just compensation therefor notwithstanding that the damage results from its discharge of a governmental function.

**3. Eminent Domain § 21: Municipal Corporations § 16—Complaint held to allege cause for compensation for taking of property by eminent domain.**

The complaint and amended complaint in this action against a municipality alleging that the operation by the city of its sewage disposal plant, incinerator and abattoir resulted in the discharge of noxious odors and ashes and the breeding of vermin and constituted a nuisance which depreciated the value of plaintiffs' land and constituted a taking of same

1—215

without the payment of just compensation, states a cause of action to recover damages for the taking of private property by eminent domain, notwithstanding allegations that the city was negligent in operating the abattoir in dumping all kinds of refuse, junk and rubbish, creating an unsightly appearance and an insanitary condition, the gravamen of the complaint being the partial taking of plaintiffs' property by the creation of a nuisance, and not an action for damages for negligence.

**4. Municipal Corporations § 46—**

Substantial compliance with the provisions of a city charter requiring notice of claim as a condition precedent to an action against the city in tort, is sufficient, the provision being in derogation of common law, and the notice in this case *is held* in substantial compliance with the statute and sufficient.

**5. Municipal Corporations § 47—Action against city for damages to private lands from continuing nuisance is governed by charter provisions relating to eminent domain.**

An action to recover for damages to private lands resulting from the operation by a city of its sewage disposal plant, incinerator and abattoir, constituting a continuing or recurring nuisance, is an action for the partial taking of land by imminent domain and is governed by the provisions of the city charter requiring actions against the city for the taking of private property to be instituted within two years of such taking (sec. 59, ch. 232, Private Laws of 1927), and not by the provisions of its charter prescribing a one-year limitation for actions against the city in tort (sec. 115, ch. 232, Private Laws of 1927), and the action being for a continuing or recurring nuisance, only damages sustained prior to the two-year limitation are barred. C. S., 442, 1330.

**6. Limitation of Actions § 6—Each separate act of continuing or recurring nuisance gives rise to separate cause of action.**

This action was instituted against a municipality to recover damages to private lands resulting from a continuing or recurring nuisance in the operation of its sewage disposal plant, incinerator and abattoir. *Held:* Each successive act constitutes a distinct and separate renewal of the wrong, and only damages suffered prior to the bar of the statute are affected thereby, and plaintiff is entitled to recover for such partial taking of his land the difference in the value of his land at the time of the institution of the action and its value at the time the statute ceased to bar his claim.

STACY, C. J., BARNHILL and WINBORNE, JJ., dissent.

APPEAL by plaintiffs from *Hill, Special Judge,* at April Term, 1938, of FORSYTH. Reversed.

This is an action brought by plaintiffs against defendant to recover damages for alleged injury in taking plaintiffs' real estate, rendering it unfit for habitation by erecting, maintaining and continuing certain nuisances, in close proximity, viz.: The sewage disposal plant which was erected prior to 1926. The incinerator which was erected in 1931. The abattoir which was erected less than two years before this action was

commenced. Summons in this action was issued 12 October, 1937; notice of claim to defendant was given 17 July, 1937. The sewage disposal plant, the incinerator and the abattoir are separate projects housed in separate buildings. The plaintiffs own 6.4 acres of land. The property is right up against the incinerator and from three hundred to six hundred feet from the abattoir. There is a city dump for cinders and other refuse from the incinerator within 400 feet from plaintiffs' home. There is plenary evidence of offensive odors from the abattoir and mosquitoes from stagnant water in the dump.

The complaint alleges, in part: "That the incinerator of the defendant adjoins the lands of the plaintiffs; that the defendant's sewer disposal plant and the abattoir are located near plaintiffs' land. . . . That the noxious and violent odors emanating from the disposal plant, the gaseous smoke, fumes and ashes arising from said incinerator so contaminate the atmosphere on plaintiffs' entire premises that said land has become unfit for use and unfit for human habitation, causing and creating a permanent and continuous nuisance upon the lands and property of said plaintiffs. That the defendant's 'abattoir is also located near plaintiffs' property; that the defendant, pursuant to an ordinance duly adopted, requires that all animals slaughtered for the purpose of sale in the city of Winston-Salem be dressed and inspected at its abattoir as aforesaid. That near plaintiffs' premises, the defendant has negligently dumped all kinds of refuse, junk and rubbish; that because of this negligent and careless conduct, there has been created an unsightly appearance, as well as an insanitary condition adjacent to plaintiffs' premises; that because of this and other negligent conduct of said defendant, a condition has been created contiguous to plaintiffs' said land which has caused the breeding of innumerable rats, mosquitoes, other harmful insects and vermin, causing said plaintiffs' property to become almost worthless and wholly undesirable for human habitation. That the plaintiffs are unable to dispose of their lands for any appreciable sum for any purpose because of the violent, noxious and offensive odors, falling ashes and other causes herein complained of which amount to the taking of plaintiffs' property by defendant without compensation and without due process of law; that because of the unjust taking of plaintiffs' land by said defendant, the plaintiffs have suffered damage and loss," etc.

An amendment, which we do not think changes the cause of action, but amplifies it, was allowed to the complaint, which was filed on 1 March, 1938, and reads as follows: "That all of the offal from the slaughtered animals killed in the abattoir are disposed of in said plant; that in the disposition of this offal, the entrails of the slaughtered animals are torn into shreds as they are taken from the carcasses and

cooked; that the grease is separated from the 'tankage' and both are disposed of and hauled away; that in the cooking and carrying away of this offal obnoxious and nauseating odors are created and the air is permeated with them; that the animals are kept in pens preparatory to their being slaughtered; that a great many houseflies are hatched and that they infest the premises of the plaintiffs; that, while these cattle are impounded awaiting slaughter, the noises made by them greatly disturb these plaintiffs and render their property unfit for any purpose other than agricultural lands; that the blood and offal which is the natural results of slaughtering animals, are carelessly and negligently left in and around this abattoir, which adds to, if possible, the odors emanating from the slaughterhouse itself; that in the mounds of cinders which have been placed on other property than that belonging to the city, which is adjacent to and almost surrounds the property of the plaintiffs, rats' den and rats have become so numerous that it is almost impossible for the plaintiffs to raise chickens or any grain on the lands mentioned in the complaint; that these acts on the part of the defendant have rendered the property of the plaintiffs almost entirely worthless; that these acts are permanent, constant and continuing and, as a result thereof the defendant has appropriated the property of the plaintiffs mentioned in the complaint; and that the falling cinders, ashes and soot and odors emanating from the incinerator plant, together with the erection and maintenance of the abattoir, have also added an increased burden on the property of the plaintiffs."

There was evidence to sustain the allegations of the complaint. The evidence is to the effect that the allegation of damages from the abattoir occurred within two years before the action was commenced. The defendant denied the material allegations of the complaint and set up the defense that plaintiffs' notice was not sufficient in law—"It is denied that said paper writing is in conformity with the laws of the State of North Carolina, or section 115 of the charter of the city of Winston-Salem."

At the close of plaintiffs' evidence the defendant in the court below made a motion for judgment as in case of nonsuit. C. S., 567. The court below overruled the motion. At the conclusion of all the evidence the defendant renewed its motion for judgment as in case of nonsuit. The motion was granted. The plaintiffs excepted, assigned error and appealed to the Supreme Court.

*John C. Wallace and Parrish & Deal for plaintiffs.*
*Ratcliff, Hudson & Ferrell for defendant.*

CLARKSON, J. We think there was error in granting the nonsuit, as the evidence was sufficient to be submitted to the jury.

In *Shute v. Monroe,* 187 N. C., 676 (683), is the following: "The Anglo-Saxon holds no material thing dearer than the ownership of land, his home is termed his 'castle.' Although there is nothing in the Constitution of North Carolina that expressly prohibits the taking of private property for public use without compensation (the clause of the United States Constitution to that effect applies only to act by the United States and not to government of the State), yet the principle is so grounded in natural equity and justice that it is a part of the fundamental law of this State that private property cannot be taken for public use without just compensation. *Johnson v. Rankin,* 70 N. C., 555." *McRae v. Fayetteville,* 198 N. C., 51 (54); *Reed v. Highway Com.,* 209 N. C., 648 (654).

In *Metz v. Asheville,* 150 N. C., 748 (751), speaking to the subject, it is written: "The reason of this distinction in regard to property seems to lie in the fact of ownership, vested rights, which no one can invade, not even the government, unless for public purposes, and then only by paying the owner for it. Where, in the discharge of its governmental functions and police powers, the officers of a municipality invade property rights, the doctrine of *respondeat superior* applies and the corporation is liable for their acts."

In *Hines v. Rocky Mount,* 162 N. C., 409 (412), citing a wealth of authorities, it is stated: "This general principle is subject to the limitation that neither a municipal corporation nor other governmental agency is allowed to establish and maintain a nuisance, causing appreciable damage to the property of a private owner, without being liable for it. To the extent of the damage done to such property, it is regarded and dealt with as a taking or appropriation of the property, and it is well understood that such an interference with the rights of ownership may not be made or authorized except on compensation first made pursuant to the law of the land. . . . In affording redress for wrongs of this character, injuries caused by a nuisance wrongfully created in the exercise of governmental functions, our decisions hold as the correct deduction from the above principle that the damages are confined to the diminished value of the property affected." *Moser v. Burlington,* 162 N. C., 141.

In *Rhodes v. Durham,* 165 N. C., 679 (680), it is said: "We have held, in several recent cases, that damages may be recovered for a wrong of this character, and, to the extent that the value of plaintiff's property is impaired, the right is not affected because the acts complained of were done in the exercise of governmental functions. *Donnell v. Greensboro,* 164 N. C., 331, and authorities cited. . . . (pp. 682-3) And in the citation to Lewis on Eminent Domain, *supra* (1 Vol. [3rd Ed.], sec. 230), referring to the kind of injuries which may be treated as a

taking of property, the author says: 'The owner of land has a right that the air which comes upon his premises shall come in its natural condition, free from artificial impurities. This right has its corresponding obligation, which is that one must not use his own premises in such a manner as to discharge into the atmosphere of his neighbor dust, smoke, noxious gases, or other foreign matter which substantially affects its wholesomeness. This right is very fully treated by Mr. Wood in his work on Nuisances, and a reference thereto will suffice. The right to pure air is property, and to interfere with the right for public use is to take property. There can be no question that the erection of gas works, or the setting up of any other noxious trade, in the vicinity of my premises that emits noxious odors, which are sent over my lands in quantity and volume, sufficient to essentially interfere with the use of that air for the ordinary purposes of breath and life, so as to constitute a legal nuisance, is such a taking of my property as the legislature may not permit without compensation.' "

The defendant contends that this is an action in tort for negligence. To be sure the use of the word negligent, etc., is used, but the allegations are specific that plaintiffs' property is taken on account of the nuisance without the payment of "just compensation." "That the plaintiffs are unable to dispose of their lands for any appreciable sum for any purpose because of the violent, noxious and offensive odors, falling ashes and other causes herein complained of, which amount to the taking of plaintiffs' property by the defendant without compensation and without due process of law; that because of the unjust taking of plaintiffs' land by said defendant, the plaintiffs have suffered damage and loss," etc. To the same effect is the amendment to the complaint, which was allowed.

Liberally construed, "The gravamen of the complaint is the partial taking of plaintiffs' property by the creation of a nuisance." *Jones v. High Point,* 202 N. C., 721 (722).

The principles of law in reference to this controversy were thoroughly discussed in *Gray v. High Point,* 203 N. C., 756. In that case the issue was: "Has plaintiffs' land as described in the complaint been wrongfully taken by the defendant through noxious odors from the operation of defendant's sewer plant, as alleged in the complaint?" *Durham v. Lawrence, post,* 75.

In the old case of *Dargon v. Waddill,* 31 N. C., 244, it is held: "A stable in a town is not, like a slaughter pen or a hog sty, necessarily or *prima facie* a nuisance. But if it be so built, so kept, or so used, as to destroy the comfort of persons owning and occupying adjoining premises and impairing their value as places of habitation, it does thereby become a nuisance. If the adjacent proprietors be annoyed by it in any manner,

which could be avoided, it becomes an actionable nuisance, though a stable in itself be a convenient and lawful erection." *S. v. Bass,* 171 N. C., 780.

In *King v. Ward,* 207 N. C., 782, it is held: "If operator of cotton gin during ginning season encouraged and permitted persons bringing cotton to be ginned to park their teams in front of plaintiff's home for operator's convenience, and to remain in street for long periods, emitting odors which impaired comfortable occupancy of plaintiff's home, nuisance would be shown. It will be seen that a thing not a nuisance may become so by its use."

The defendant's main contention is that the notice given it by plaintiffs is not sufficient in law, and pleads section 115, of chapter 232, Private Laws of 1927—Charter of City of Winston-Salem. Said section is as follows: "All claims and demands against the city of Winston-Salem arising in tort shall be presented to the board of aldermen of said city or to the mayor, in writing, signed by the claimant, his attorney or agent, within ninety (90) days after said claim or demand is due or the cause of action accrues; that no suit or action shall be brought thereon within ten (10) days or after the expiration of twelve (12) months from the time said claim is so presented, and unless the claim is so presented within ninety (90) days after the cause of action accrued, and unless suit is brought within twelve (12) months thereafter, any action thereon shall be barred." However, there is another section (59), which is as follows: "The city of Winston-Salem, whenever it shall require lands, or interests in lands, lying within the corporate limits, may proceed to acquire title to the same under this charter; or it may, as the board of aldermen may determine, proceed under the public laws of North Carolina relating to eminent domain and municipal corporations. As to all lands taken, or claimed by the owner to have been taken by the city of Winston-Salem for public use, all actions or proceedings for damages by the owner of the lands shall be commenced within two years after the first occupancy by the city and not afterwards." C. S., 442. See N. C. Code, 1935 (Michie), sec. 1330; *Sugg v. Greenville,* 169 N. C., 606 (617).

In White's Negligence of Municipal Corporations, sec. 667, it is stated: "Statutes requiring written notice of claim as a condition precedent to an action against the city, being in derogation of common law, are to be strictly construed." McQuillan Municipal Corporations, sec. 2629 (Revised Vol. 6). In recognition of the constitutional nature of the cause of action arising from the taking of land by the maintenance of a nuisance, it is stated in McQuillan, etc., *supra:* "The requirement has no application for the abatement of a continuing nuisance recurring from time to time."

In *Thomann v. Rochester,* 245 N. Y. Supp., 680, 230 App. Div., 612, it is held that: If the requirement of written notice of claim is applicable to cases of continuous damages to neighborhood property from the maintenance of a city dump, to such an extent the legislation is unconstitutional.

In *Graham v. Charlotte,* 186 N. C., 649 (659), it is stated: "But a substantial compliance with the statute is all that is required, and the notice need not be drawn with the technical nicety necessary in pleading. McQuillan on Municipal Corps. (Vol. VI), section 2718." It is not necessary to "Dot an I, or cross a T." We think the statute was substantially complied with and the notice sufficient. These special privilege statutes given by the General Assembly to municipalities should be liberally construed.

In *Lightner v. Raleigh,* 206 N. C., 496 (504), it is said: "The principle is set forth in 37 C. J., 'Limitations of Actions,' part sec. 249, pp. 883-4: 'Cases frequently arise where damages resulting from an act are continuing or recurring so that they cannot presently be ascertained or estimated so as to be presently recoverable in a single action. In such cases separate and successive actions may be brought to recover the damages as they accrue, and a judgment rendered in one of such actions for damages accrued up to the time when suit was brought is no bar to another action to recover damages accruing after the judgment. To cases of this character, the statute of limitations does not have the same rigid application as to cases where all the damages may be recovered in a single action, and the two main principles applying are as follows: Where continuing or recurring injury results from a wrongful act or from a condition wrongfully created and maintained, such as a continuing nuisance or trespass, there is not only a cause of action for the original wrong, arising when the wrong is committed, but separate and successive causes of action for the consequential damages arise as and when such damages are from time to time sustained; and therefore so long as the cause of the injury exists and the damages continue to occur plaintiff is not barred of a recovery for such damages as have accrued within the statutory period beyond the action, although a cause of action based solely on the original wrong may be barred, and this has been termed the general rule, to which the rule, where the injury is permanent, is an exception.' *Perry v. R. R.,* 171 N. C., 38; *Teeter v. Telegraph Co.,* 172 N. C., 783; *Morrow v. Florence Mills,* 181 N. C., 423; *Anderson v. Waynesville,* 203 N. C., 37; *Gray v. High Point,* 203 N. C., 756; *Langley v. Hosiery Mills,* 194 N. C., 644 (646)."

As the alleged nuisance is a continuing or recurring one, we think the two-year statute is applicable, as the alleged nuisance when it be-

comes effective is such an occupancy and appropriation of private property for public use for which an action would lie.

N. C. Code, 1935 (Michie), section 441 (3), is as follows: "Within three years an action (3) For trespass upon real property. When the trespass is a continuing one, the action shall be commenced within three years from the original trespass, and not thereafter." Speaking of this section, *Hoke, J.,* in *Sample v. Lumber Co.,* 150 N. C., 161, pp. 165-6, for the Court said: "True, the statute declares that actions for trespass on real estate shall be barred in three years, and when the trespass is a continuing one such action shall be commenced within three years from the original trespass, and not thereafter; but this term 'continuing trespass' was no doubt used in reference to wrongful trespass upon real property, caused by structures permanent in their nature and made by companies in the exercise of some *quasi*-public franchise. Apart from this, the term could only refer to cases where a wrongful act, being entire and complete, causes continuing damage, *and was never intended to apply when every successive act amounted to a distinct and separate renewal of wrong.*" (Italics ours). *Tecter v. Telegraph Co.,* 172 N. C., 783 (785-6).

We think the case of *Lightner v. Raleigh, supra,* applicable to this action. In that case this Court approved the following charge (at pp. 505-6): "The damages which the plaintiffs would be entitled to recover, if any, would be limited to what has occurred within the last three years prior to the beginning of this suit. . . . We now come to the last issue, or the fifth issue: What damages, if anything, are the plaintiffs entitled to recover of the defendant by reason of the operation and maintenance of said sewerage system? Now, gentlemen of the jury, let me impress this upon you. It is the law, as I understand it, and for the purpose of this action it is the law, that if you allow the plaintiffs any damages in this case it will only be such damages as were inflicted upon the lands since 13 February, 1929, up to the beginning of this action. That is, permanent damages, . . . the burden of this issue is upon the plaintiffs. They argue to you that they have been damaged during the years 1930, 1931, 1932 and 1933; that there has been an additional burden cast upon the lands by reason of the overflow of sewage during that period and that you ought, in good conscience, to allow them damages for the depreciation of the value of the land due to this additional burden. These are all questions to be resolved by you, gentlemen, and so, in conclusion, remembering that the measure of damage is the difference in value between the lands prior to 13 February, 1929, and after the acts of trespass complained of on the part of the city. That is, gentlemen, you will estimate what was the fair market value of these

lands prior to any act of trespass on the part of the city during the past three years. You will then estimate what the lands were worth after the acts complained of during the past three years prior to the institution of this action. You will deduct the latter figure from the former and the difference between the two would be your answer to this issue."

For the reasons given, the judgment of the court below is
`Reversed.

STACY, C. J., and BARNHILL and WINBORNE, JJ., dissent.