O. F. YOUNG v. CITY OF ASHEVILLE, A MUNICIPAL CORPORATION, THE
BEAVERDAM WATER AND SEWER DISTRICT, A MUNICIPAL CORPORA-
TION, AND JOHN C. VANCE, COKE CANDLER AND GEORGE D. YOUNG,
COUNTY COMMISSIONERS, AS TRUSTEES OF THE BEAVERDAM WATER
AND SEWER DISTRICT.

(Filed 23 March, 1955.)

**1. Waters and Water Courses § 1—**

Land must be in actual contact with a stream in order for the owner of
the land to have riparian rights therein, and mere proximity without con-
tact is insufficient.

**2. Same—**

In this action for invasion of riparian rights along a natural stream, plain-
tiff lessee alleged title to the land in his lessor by deed containing a gen-
eral description of the land as being in a named township "and on Beaver-
dam Creek," with particular description by course and distance, which
particular description made no reference to the creek. *Held:* The allega-
tions are insufficient to show that the land was in actual contact with the
creek so as to give plaintiff's lessor riparian rights therein.

**3. Boundaries § 2—**

Where a deed contains a specific description by metes and bounds, words
in the general description ordinarily may not vary or enlarge the specific
description.

**4. Pleadings § 24—**

Proof without allegation is unavailing.

**5. Waters and Water Courses § 1—**

If riparian rights attached to a small tract of land, whether such rights
extend to a larger tract acquired by the owner of the first tract from a
different source, *quaere?*

**6. Same—**

Plaintiff alleged that his lessor was granted authority and license by a
riparian owner to locate an intake for an irrigation system in the creek
and to use the water of the creek for irrigation purposes. *Held:* In the
absence of evidence in support of such allegation, plaintiff may not assert
riparian rights under such license, even if it be conceded that a riparian
owner may transfer his riparian rights to a nonriparian owner.

**7. Waters and Water Courses § 1½ —**

Ordinarily, water rights may be acquired, even by a nonriparian owner,
by adverse user which is visible, notorious, continuous and adverse under
claim of right for the period required to acquire rights in real property
adversely to the owner.

**8. Same—**

Allegations to the effect that plaintiff and his predecessor had pumped
water from a certain creek for the purpose of irrigating crops for a num-
ber of years, and that the existence, location, and use of the said irrigation

system was obvious and well-known, is insufficient to allege the right to use the waters of the creek by prescription in the absence of any allegation or proof that his user was adverse.

**9. Municipal Corporations § 15b: Waters and Water Courses § 3—**

Where municipal corporations negligently permit sewage to pollute the waters of a creek, they may be held liable by riparian owners for damages for the invasion of their rights to have the stream flow in its natural purity, and damages to nonriparian owners for invasion of property rights by the actual deposit of sewage on their land or the emanation of foul odors which invade the land in natural course.

**10. Same—**

Plaintiff's allegation and evidence were to the effect that he operated an overhead irrigating system for his crops, using waters of a natural stream, that defendant municipalities negligently allowed raw sewage to be discharged into the stream and that plaintiff's pumps and overhead irrigating system pumped the sewage from the creek over plaintiff's land, so that the crops grown thereon had to be destroyed. *Held:* Riparian rights in plaintiff not being established, the allegations and evidence fail to show an invasion of plaintiff's property as a result of the acts of defendants complained of, since the deposit of the sewage on plaintiff's land was the result of the operation of the irrigating system and not the acts of defendants.

**11. Pleadings § 24—**

Both allegation and proof are necessary, and plaintiff, if he is to succeed at all, must do so on the case set up in his complaint.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by both defendants from *Dan K. Moore, J.*, at Regular October Term 1954 of BUNCOMBE.

Civil action to recover damages for the loss of a crop of cabbages and collards growing on leased land by reason of the negligent maintenance and use of a sewer line along the banks of Beaverdam Creek by both defendants, which permitted live human sewage and poisonous and deleterious substances to be discharged into the waters of the Creek, thereby contaminating and polluting its waters used by plaintiff to irrigate by overhead irrigation his crop of vegetables.

Plaintiff's evidence tended to show these facts: During the year 1953 he had under lease from R. F. Young, his father, 12 acres of land. Three acres, more or less, of this land R. F. Young had purchased in 1915 from J. H. Brittain and Forrest Brittain. South of this 3 acre tract R. F. Young owned 11 or 12 acres, which he had bought from S. K. Young and wife. The land bought from the Brittains and Youngs was the land leased to plaintiff. R. F. Young also owned about an acre of woodland on the road adjoining this land which he purchased from Verne Rhoades. On the 3 acre tract of land was a pump house and irrigation system owned

by R. F. Young and leased to plaintiff. From the pump house to the waters of Beaverdam Creek is somewhere in the neighborhood of 100 feet. A standard gauge railroad track runs between the 3 acre tract and Beaverdam Creek. From the pump house to the railroad track is 25 or 30 feet, maybe further. The railroad track is on the south side of the Creek. Pipes extended from the pump house to the waters of Beaverdam Creek and from the pumphouse over the 12 acres of land to irrigate it with waters pumped from the Creek. The pump is down at the foot of the hill. The overhead irrigation system is up on the top of the hill. The cabbages were up on the hill from the pump house. It was overhead irrigation, and from the pipes water was sprayed or sprinkled over the crops. R. F. Young had used this irrigation system continually for 30 or 35 years in growing vegetables on his land, twelve acres of which was "cultivatable truck farm land."

The City of Asheville—hereafter called the City—and The Beaverdam Water and Sewer District—hereafter called the District—are municipal corporations, which since 1929 have jointly maintained, operated and used a sewer line which runs along the bank of Beaverdam Creek, sometimes 10, 15 or 20 feet from the bank and sometimes right against the bank. The intake of the pipe of the irrigation system used by plaintiff was near the center of the Creek, and its closest point to the sewer line of the defendants was 6 or 8 feet. This sewer line ran along the side of the Creek, as it passed by plaintiff's intake pipe.

In the early part of 1953 plaintiff made a bean crop on the leased land. He saw no sewage in the waters of Beaverdam Creek, when this crop was made. About 1 August 1953 plaintiff set out on this leased land about 150,000 cabbage plants and about 50,000 collard plants. By 10 August all these plants were in the ground. The normal growing period from the time of setting out to maturity of his type of cabbages was 60 days and of his type of collards was 45 to 50 days. July, August and September 1953 was a period of extreme drought. Plaintiff could not have grown his cabbages and collards without irrigating them by water from Beaverdam Creek: no other water was available to him. In August he used the water by irrigation from Beaverdam Creek. He observed nothing wrong with the waters of the Creek that month. The last of August his cabbages and collards were growing and maturing properly.

On 1 September 1953 his irrigation pipes began stopping up. He went to Beaverdam Creek. It was full of sewage: running raw human sewage. He had had no trouble of that kind prior to that day. On this day sewage was sprayed on his vegetables. In September and October he had continuous trouble with the pipes of the irrigation system stopping up with sewage from the waters of the Creek, while irrigating his vegetables. Some days there would be lots of sewage coming from the sewer line into the

Creek, some days not so much: at times the whole sewage line came into the Creek.

Both defendants used the sewer line when it was old and worn out, had holes in the line and had the manholes partially filled and obstructed, which permitted the sewage to leak and flow from the line into the waters of Beaverdam Creek. That both defendants knew of this condition. The defendants would repair the holes in the sewer line, and new ones would come before their employees could get back to the city. A witness for the defendants testified that in September and October 1953 there were a number of breaks in the sewer line; that essentially all the liquid in Beaverdam Creek at that time was sewage, and the condition there was a nuisance.

Because plaintiff had sprayed or sprinkled the polluted and contaminated waters of Beaverdam Creek upon his crop of cabbages and collards during August, September and October, an action was brought against him and his father by L. Y. Ballentine, Commissioner of Agriculture of the State of North Carolina, to prohibit the sale or disposition of the cabbages and collards. The court issued an injunction as requested, whereupon plaintiff cut up his cabbages and collards, and disked them into the land, resulting in the loss of his entire crop, and a loss to him of $17,000.00.

The following issues were submitted to the jury, and answered as appears below:

"1. Was the plaintiff's property damaged by a nuisance created by the negligence of the defendants on Beaverdam Creek, as alleged in the Complaint? Answer: YES.

"2. Was the plaintiff guilty of contributory negligence, as alleged in the Answer? Answer: No.

"3. What amount of damages, if any, is the plaintiff entitled to recover of the defendants? Answer: $4500.00."

From judgment signed in accordance with the verdict both defendants appealed, assigning error.

*Williams & Williams* for Plaintiff, Appellee.

*Robert W. Wells and George H. Wright* for Defendant, City of Asheville, Appellant.

*Roy A. Taylor and Don C. Young* for Defendant, The Beaverdam Water and Sewer District, Appellant.

PARKER, J. The defendants' sole assignments of error are the refusal of the Trial Court to sustain their separate motions for judgments of nonsuit made at the close of plaintiff's evidence, and renewed at the close of all the evidence.

The defendants have filed a joint brief. Their argument that the action should have been nonsuited is based upon three grounds. First, that the plaintiff has neither alleged, nor offered evidence tending to show that his lessor was a riparian owner, or had acquired in some way riparian rights in the waters of Beaverdam Creek, and if they, or either of them polluted the waters of the Creek, they breached no duty as to him. Second, if there was a breach of duty, it was not the proximate cause of plaintiff's damage. And third, if they, or either of them, proximately caused plaintiff's damages, then the plaintiff is barred from recovery by his contributory negligence as a matter of law.

A riparian proprietor is an owner of land in actual contact with the water; proximity without contact is insufficient. An indispensable requisite of the riparian doctrine is actual contact of land with water. *Illinois C. R. Co. v. Illinois,* 146 U.S. 387, 36 L. Ed. 1018 at p. 1040; *Stratbucker v. Junge,* 153 Neb. 885, 46 N.W. 2d 486; *Crawford Co. v. Hathaway,* 67 Neb. 325, 93 N.W. 781, 60 L.R.A. 889, 108 Am. St. Rep. 647; *Hilt v. Weber,* 252 Mich. 198, 233 N.W. 159, 71 A.L.R. 1238; 56 Am. Jur., Waters, 731; 67 C.J., Waters, 685, Coulson & Forbes, Waters and Land Drainage, 5th Ed. pp. 110-111.

In *Lyon v. Fishmongers,* (1876) L. R. 1 App. Cas. 662, p. 683, *Lord Selborne* said: "It is, of course, necessary for the existence of a riparian right that the land should be in contact with the flow of the stream . . ."

Plaintiff in his Complaint does not allege the description of the 11 or 12 acre tract of land R. F. Young purchased from S. K. Young and wife. The sole description of the location of the land leased by plaintiff is of the 3-acre tract, and is contained in Paragraph 12 of his Complaint reading as follows:

"That on said 1st day of September, 1953, this plaintiff had under lease from R. F. Young a certain parcel or tract of land consisting of 12 acres, a part of which said acreage was deeded to the said R. F. Young by J. H. Brittain and Forrest Brittain by deed dated the 5th day of December, 1915, and recorded in the Office of the Register of Deeds of Buncombe County in Deed Book 205, page 168, and more particularly described as follows:

"A certain piece, parcel or lot of land, situate, lying and being in Asheville Township and Beaverdam Ward, and on Beaverdam Creek and joining lands of J. H. Brittain and R. F. Young, and bounded and more particularly described as follows:

"BEGINNING at a stake on west side of branch, said stake being the 3rd corner from spring and the J. H. Brittain Home Tract, also R. F. Young's corner, and runs with said Young's naked line S. 67 deg. 30′ W. 495 feet to a Black Oak; thence with the Vance old Line N. 10 deg. 40′ 292.6 to stake 25 ft. N. of the middle of the Craggy Mt. RR; thence

parallel to 25 ft. from the center of said RR as follows: N. 35 deg. E. 100 ft. N. 50 deg. E. 50 ft. N. 70 deg. E. 50 ft. E. 100 ft. South 86 deg. 30' E. 185 ft. to a stake situated 25 ft. from the middle of said RR; thence South 4 deg. 191½ feet to the BEGINNING, containing three acres more or less."

Plaintiff says in his Brief that he has alleged a riparian ownership in Paragraphs 12 and 16 of his Complaint. Paragraph 16 reads as follows:

"That the aforementioned property and the irrigation system located thereon lie below and to the west or northwest of the aforementioned pollution and contamination and that as a result thereof the aforementioned polluted waters of Beaverdam Creek, on or about the 1st day of September, 1953, were picked up by said irrigation system and sprayed upon the crops belonging to this plaintiff and being grown upon the aforementioned 12 acres, including a large quantity of collards and cabbages which this plaintiff was producing for public sale as his livelihood."

Plaintiff's evidence as to the location in reference to Beaverdam Creek of the land leased by him from R. F. Young comes from his witness R. F. Young, largely on cross-examination, and himself. R. F. Young's testimony tends to show these facts: He owns 20 acres of land in the Newbridge area on Beaverdam Creek. He used the acreage on the Creek to grow vegetables. On cross-examination by the City he said he bought the 3 acre tract of land from the Brittains, the 11 or 12 acres south of the three acres from S. K. Young and wife, and about one acre of woodland on the road from Verne Rhoades. On cross-examination by the District he testified: "I know about the railroad that runs down to Elk Mountain and the Creek. That railroad runs right between my three-acre tract and the Creek. It is a standard gauge railroad. I didn't say there was no cabbages on this three-acre tract; there was. The pump house is down at the foot of the hill. The cabbages was up on the hill from the pump house. There was a water line running from the pump house up to the top of the hill. This overhead irrigation system is up on top of the hill. The pump is down at the foot of the hill. The water line runs from the pump house to near the top of the hill, then starts the overhead irrigation. The pump house is about 100 yards or something like that up to and from where the irrigation starts. The railroad I speak of was between my land and the pump house and the creek. Mr. Verne Rhoades owns that land in there between my three acres and the creek, that is, last year he owned it, and he still owns it. I guess my property line runs to the creek, as well as I know, with just the railroad between us there. Q. You said a moment ago that Verne Rhoades owns the land between your property line and— A. (Interrupting) On the other side of the creek. I don't know whether my deed calls for 25 feet of the railroad. Q. Doesn't your deed call for 25 feet from the railroad and running parallel with it? A. There is a

deed. I don't know whether it calls for the creek or the center of the railroad. You can read it. My property goes on down the other side over there. The only property that I have got there near that was the three acres that I got from Mr. Brittain, that is the nearest at that point. Whatever the Brittain deed says is what I have there." On redirect-examination he said: "The Verne Rhoades property runs up and down the creek; it is on the north side. My property is more on the south side. This is my deed for the Brittain property. Mr. Verne Rhoades has owned the north bank for approximately 15 or 20 years. Q. During the time that that pump has been in have you been in continuous possession of it all that time? Objection—overruled—exception. EXCEPTION No. 11. A. Yes, I have been in possession of it." On recross-examination he said: "I have a fence between the pump house and the railroad to keep my stock in. Q. That fence goes along the northern line of your tract of land? A. It goes along the line of the railroad there. Q. It goes along your line? A. No, I don't know. It lacks quite a little bit of being on the line so far as I know."

Plaintiff's testimony is to this effect: In 1953 he leased from his father, R. F. Young, 12 acres of land "on Beaverdam Creek." On cross-examination by the City plaintiff said: "There is a railroad track just north of this 12 acre tract that I had under cultivation. That railroad track is between my twelve acres and the Creek; it comes to the tract that my father bought . . . From the pump house to the railroad tracks it is 25 or 30 feet, maybe further . . . I couldn't tell you exactly how far it is from the pump house to the Creek. It is somewhere in the neighborhood of 100 feet. Along the north side of the property under cultivation part of it is under fence and part of it is not. Part of the fence is on the south side of the railroad track, and part there is no fence. All the south side of the railroad, part is fenced and part is not."

The Complaint in the Ballentine Case against R. F. Young and plaintiff is plaintiff's Exhibit 3. No answer to this Complaint is in the Record. In that Complaint the land upon which plaintiff was growing cabbages and collards is described as "near Beaverdam Creek," and it further alleges "that said defendants through various mechanical devices and pipes are pumping water from Beaverdam Creek from a point approximately 800 feet from that area where the cabbages are being raised through a series of pipes to said area where the cabbages are being raised to irrigate same."

There is no evidence of the defendants of which the plaintiff can avail himself to show whether the land leased by him had actual contact with the water of Beaverdam Creek.

This Court said in Von Herff v. Richardson, 192 N.C. 595, 135 S.E. 533, in respect to description of land in a deed: "But as between two

descriptions, the law ordinarily prefers the specific to the general, or that which is more certain to that which is less certain."

The specific description in the deed of the 3 acre tract is not ambiguous or insufficient, nor is there a reference in the general description to a fuller and more accurate description of the land, so as to require the general description to control the specific description under the principles stated in *Lee v. McDonald*, 230 N.C. 517, 53 S.E. 2d 845; *Quelch v. Futch*, 172 N.C. 316, 90 S.E. 259.

In *Prentice v. R. R.*, 154 U.S. 164, 38 L. Ed. 947, the second headnote is: "Where, in a deed, there is a specific description, by metes and bounds, of the lands conveyed, other words therein intended to describe generally the same lands, do not vary or enlarge the specific description." See also *Lee v. McDonald, supra.*

The specific description of the 3 acre tract of land controls, and the boundary line called for in the specific description is the track of the railroad, and not Beaverdam Creek. Therefore, the plaintiff has not alleged that his lessor is a riparian proprietor, and he has no better rights than his lessor. See *Durham v. Cotton Mills*, 141 N.C. 615, at p. 627, 54 S.E. 453, where it is said: "They do not allege that the City of Durham is the owner of any part of the banks of that stream. . . ."

It is a serious question as to whether plaintiff's evidence tends to show that his lessor is a riparian proprietor. It is not necessary for us to decide that question, because proof without allegation is insufficient. *Aiken v. Sanderford*, 236 N.C. 760, 73 S.E. 2d 911.

If plaintiff had had *allegata* and *probata* that his lessor was a riparian proprietor as to the 3 acre tract of land, *quaere*, would this right extend or attach to the 11 or 12 acres R. F. Young purchased from S. K. Young and wife south of the 3 acre tract? 56 Am. Jur., Waters, 732; Anno. 14 A.L.R. 330; Anno. 54 A.L.R. 1411.

Paragraph 15 of plaintiff's Complaint reads as follows: "That in addition to the foregoing, this plaintiff's lessor, R. F. Young, procured and was granted authority and license by one Sol Carter, riparian owner of the north bank of said Beaverdam Creek at the location of said irrigation intake and pump house, to locate the intake for said irrigation system in said creek and to use the waters of said creek for irrigation purposes about the year 1935 and said authority and license has continued since said date and has been ratified from time to time by the successors in title of the said Sol Carter." Plaintiff has offered no evidence to support the allegations of this paragraph of his Complaint. If R. F. Young, plaintiff's lessor, was a riparian owner, why did plaintiff allege that R. F. Young procured from Sol Carter, a riparian owner, authority and license to use the waters of Beaverdam Creek? *Quaere*, can a riparian owner transfer his riparian rights to a nonriparian owner? *Mt. Shasta Power*

*Corporation v. McArthur* (Cal.), 292 P. 549; *Harvey Realty Co. v. Borough of Wallingford,* 111 Conn. 352, 150 A. 60; *Hendrix v. Roberts Marble Co.,* 175 Ga. 389, 165 S.E. 223.

Paragraphs 13 and 14 of plaintiff's Complaint are as follows:

"That located on said aforementioned 3-acre tract of land was a pump house and irrigating system owned by the said R. F. Young and leased to this plaintiff, by which for many years the said R. F. Young, or this plaintiff as lessee, had pumped waters from the aforementioned Beaverdam Creek onto the aforementioned three-acre tract and adjacent property owned by the said R. F. Young for the purpose of irrigating crops grown thereon.

"That said irrigation system located on said property and taking water from the aforementioned Beaverdam Creek, has been used by the said R. F. Young, or this plaintiff as lessee, for many years and its existence, location and use was well known to the defendants and their employees and representatives."

"It is generally recognized that, subject to certain exceptions and limitations hereinafter noted, title to water or a water right may be acquired by prescription or adverse user." 56 Am. Jur., Waters, Sec. 323. It seems that it is not necessary that a claimant to water rights by prescription or adverse user should be a riparian owner on the stream. 67 C.J., Waters, 953.

"The user on which a prescriptive right is claimed may be either by claimant himself or by one holding under him, such as a lessee or tenant." 67 C.J., Waters, 937-938.

The adverse user of water, in order to ripen into a right to use, must be visible, notorious, continuous, adverse and under a claim of right for the period required to acquire rights in real property adversely to the owner. 2 Farnham, Waters and Water Rights, Secs. 537-541; 56 Am. Jur., Waters, Sec. 326 *et seq.;* 67 C.J., Waters, Secs. 395-402.

It is said in 67 C. J., Waters, 1058: "Where plaintiff claims as appropriator, he should allege the fact of appropriation, describe the lands in connection with which or for the benefit of which his appropriation was made, and show the need of the water and the amount which he uses or to which he claims to be entitled."

In *Cannon v. A. C. L. RR,* 97 S.C. 233, 81 S.E. 476, an allegation in the Complaint that ditches obstructed by the construction of a railroad had been used to drain the lands occupied by plaintiff, including the place upon which plaintiff planted his cabbages, for more than 20 years, was held not sufficient to allege a prescriptive right to the use of such ditches without an allegation that the user was adverse.

In *Durham v. Cotton Mills, supra,* the City of Durham and its inhabitants for the past 17 or 18 years had been supplied with drinking water

from a plant located on Eno River. The Court stated, p. 627: "There is nothing in this case, as now presented, which tends to prove that the plaintiffs are riparian proprietors in respect to the Eno River."

The plaintiff has neither allegation nor proof that he, or his lessor, has acquired a right to use the water of Beaverdam Creek by prescription or adverse user.

The plaintiff has no allegation in his Complaint that he or his lessor is a riparian proprietor; neither allegation nor proof that he or his lessor have acquired a right to use the waters of Beaverdam Creek to irrigate his crops by prescription or adverse user; nor proof that he or his lessor have authority and license from Sol Carter, an alleged riparian owner, and his successors in title, to use the waters of Beaverdam Creek for the purposes of irrigation, even if such alleged authority and license were valid, about which we express no opinion. Therefore, the plaintiff has not shown that he or his lessor have a right to have the waters of Beaverdam Creek flow with undiminished quantity and unimpaired quality. *Durham v. Cotton Mills, supra,* p. 627; *Cook v. Mebane,* 191 N.C. 1, 131 S.E. 407; *Dunlap v. Light Co.,* 212 N.C. 814, 195 S.E. 43.

Plaintiff's evidence, and also the defendants', shows that the defendants, both municipal corporations, have negligently permitted sewage to pollute to a large extent the waters of Beaverdam Creek. This Court said in *Sandlin v. Wilmington,* 185 N.C. 257, 116 S.E. 733: "A municipal corporation has no more right than an individual to maintain a nuisance, and is equally liable for damages resulting therefrom; and authorized acts of a governmental character which create a nuisance causing damage to a private owner are regarded and dealt with as an appropriation of property to the extent of the injury thereby inflicted." This Court also said in *Clinard v. Kernersville,* 215 N.C. 745, p. 748, 3 S.E. 2d 267: "The liability of the town is not to be determined by any negligent conduct on its part in the operation of its disposal plant. If in so doing it in fact discharges foul matter upon the lands of the plaintiffs, or it so pollutes the water of the stream which crosses plaintiffs' land that foul and noxious odors emanate therefrom it is liable for the resulting damage, even though in so doing it is exercising a governmental function."

In *Masonite Corp. v. Burnham,* 164 Miss. 840, 146 So. 292, 91 A.L.R. 752—a case cited in the briefs of appellants and appellee here—the Court said: "A stream wholly on the land of another which has been polluted by the owner or any other person is not a nuisance *per se* to one who is not a riparian owner; as to such person it is not a nuisance unless his rights are invaded by the pollution; they may or may not be."

These are cases of an invasion of property rights: *Williams v. Greenville,* 130 N.C. 93, 40 S.E. 977 (drain choked with refuse by negligence

of municipal corporation overflows premises of adjacent landowner); *McManus v. R. R.*, 150 N.C. 655, 64 S.E. 766 (blasting rock and throwing pieces of rock on plaintiff's house and loathsome and nauseous odors from rock quarry, containing dead animals and other refuse, spreading over plaintiff's land); *Moser v. Burlington,* 162 N.C. 141, 78 S.E. 74 (sewage from defendant's sewerage system in time of freshet brought down and lodged upon lands of plaintiff, causing offensive odors); *Hines v. Rocky Mount,* 162 N.C. 409, 78 S.E. 510 (foul stench and odors); *Donnell v. Greensboro,* 164 N.C. 330, 80 S.E. 377 (offensive matter cast upon plaintiff's bottom-lands and offensive odors); *Rhodes v. Durham,* 165 N.C. 679, 81 S.E. 938 (foul odors); *Sandlin v. Wilmington, supra* (overflow of sewage upon land and consequent deposit thereon of refuse and noxious sediment causing vile odors); *Ivester v. Winston-Salem,* 215 N.C. 1, 1 S.E. 2d 88 (foul odors).

*Stowe v. Gastonia,* 231 N.C. 157, 56 S.E. 2d 413, is not in point, because there was an allegation in the Complaint that the waters of the Creek flowed through plaintiff's lands, which would seem to indicate plaintiff is a riparian owner. Neither is *Hampton v. Pulp Co.,* 223 N.C. 535, 27 S.E. 2d 538, in point, as plaintiff was a riparian owner.

Plaintiff cites in his brief *Midland Oil Co. v. Ball* (Oklahoma), 242 P. 161. In that case water supply in a pasture enclosed by fences and in possession of plaintiff was polluted by oil and salt water making the water unfit for cattle to drink. As a result of drinking this polluted water some of plaintiff's cattle died, and others were injured. A recovery was sustained, and properly so, because here was an invasion of plaintiff's possession and rights.

In the present case not one drop of the polluted waters of Beaverdam Creek fell upon plaintiff's cabbages and collards by any act of the defendants. The plaintiff, or his lessor, not being a riparian proprietor, and not having riparian rights, and not having a right to use the waters of Beaverdam Creek by prescription or adverse user, had his pump house about 100 feet from the waters of this Creek, and pumped the waters of the Creek into his overhead irrigation system sprinkling and spraying the water on his cabbages and collards growing up on top of the hill—to quote a vivid phrase of the Psalmist—in "a dry and thirsty land," even farther than the pump house from the waters of Beaverdam Creek. There has been no invasion of his rights by the defendants: their pollution of Beaverdam Creek did not cause his damage.

It is elementary learning that there must be both allegation and proof, *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14; and if a plaintiff is to succeed at all, he must do so on the case set up in his Complaint. *Sale v. Highway Commission,* 238 N.C. 599, 78 S.E. 2d 724.

For the reasons stated above the motions for judgment of nonsuit should have been allowed. It, therefore, follows that the judgment below must be reversed, and it is so ordered.

Reversed.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.